NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11580


DAVID FERNANDES vs. ATTLEBORO HOUSING AUTHORITY.


Bristol.     September 4, 2014. - November 19, 2014.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Labor, Wages.  Superior Court, Jurisdiction.  Jurisdiction, Primary jurisdiction, Superior Court, Civil Service Commission.  Public Employment, Termination, Reinstatement of personnel.  Civil Service, Applicability of provisions, Termination of employment, Reinstatement of personnel.  Employment, Termination, Retaliation.  Damages, Additur.  Practice, Civil, Additur, Attorney's fees.  Housing Authority.  Municipal Corporations, Housing authority.


Civil action commenced in the Superior Court Department on November 13, 2009.

The case was heard by Robert J. Kane, J., and motions for judgment notwithstanding the verdict, for reinstatement, and for a new trial or for additur were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Maria M. Scott for the plaintiff.
David D. Dowd for the defendant.


SPINA, J.  David Fernandes was employed by the Attleboro

Housing Authority (AHA) as a maintenance mechanic II from

January 16, 2001, until his termination on May 29, 2009. Approximately six months later, he commenced an action in the Superior Court against the AHA for alleged violations of the Wage Act, G. L. c. 149, §§ 148 and 148A. Fernandes claimed that the AHA violated § 148 by intentionally misclassifying his position as maintenance mechanic II, instead of maintenance mechanic I, and thereby failing to pay him the wages to which he was entitled. Fernandes also alleged that the AHA violated § 148A by terminating him in retaliation for complaining about nonpayment of earned wages and filing a complaint with the Attorney General's office.[1] Following a trial in January, 2012, a jury, in response to special questions, found in favor of Fernandes on both claims. The jury awarded damages against the AHA in the amount of $2,300 for unpaid wages due to misclassification, and $130,000 for lost wages due to retaliation.

The parties then filed numerous posttrial motions. Of relevance to the present appeal, the AHA filed a motion for judgment notwithstanding the verdict, contending that the Superior Court lacked subject matter jurisdiction over

---

[1] The remaining count of David Fernandes's complaint (count two) alleged that his termination violated his procedural rights under G. L. c. 121B, § 29, and G. L. c. 31, §§ 39-45. Fernandes agreed to defer consideration of this claim until the jury decided the matters of unpaid wages and retaliation. Following the jury's verdict, Fernandes voluntarily withdrew count two of his complaint.

Fernandes's wage and retaliation claims because, as a housing authority employee, Fernandes was required to bring such claims before the Civil Service Commission (commission) for resolution. Fernandes filed a motion for reinstatement to the position of maintenance mechanic I with full seniority as if he had not been terminated from employment on May 29, 2009, and a motion for a new trial on damages or, in the alternative, for additur. Following hearings, the trial judge denied all three motions in a thorough and well-reasoned decision.

First, after considering the purposes of and remedies afforded by the Massachusetts civil service law, G. L. c. 31, §§ 41-45, and the Wage Act, G. L. c. 149, §§ 148, 148A, 150, the judge discerned no legislative intent to confine a housing authority employee to the procedures set forth in the civil service law where his termination implicated violations of his rights under the Wage Act. Accordingly, the judge concluded that the AHA was not entitled to judgment notwithstanding the verdict. Next, with respect to Fernandes's motion for reinstatement, the judge was unpersuaded that G. L. c. 149, § 150, authorized such a remedy for retaliatory conduct in the absence of clear statutory language to that effect. Finally, the judge concluded that although the jury's calculation of $130,000 in damages for lost wages due to retaliation was less than the amount to which Fernandes thought he was entitled, the

award was neither unreasonable nor so unduly small as to suggest the need for additional relief. In accordance with G. L. c. 149, § 150, the judge proceeded to award Fernandes treble damages in the amount of $6,900 for unpaid wages and $390,000 for retaliatory termination, plus reasonable attorney's fees in the amount of $36,667.50 and costs of $1,087.36.

The parties' cross appeals were entered in the Appeals Court, and we transferred the case to this court on our own motion. For the reasons that follow, we conclude that the Superior Court had subject matter jurisdiction over Fernandes's claims under the Wage Act, that reinstatement to employment is not an available remedy for violations of such statutory scheme, and that the judge did not abuse his discretion in denying Fernandes's motion for additur. Accordingly, the judgment of the Superior Court is affirmed.

1. Background. We briefly recite the facts the jury could have found from the evidence at trial, reserving some details for later discussion. When Fernandes was hired by the AHA in 2001, he was classified as a maintenance mechanic II. It was an entry-level position, considered to be in the nature of an apprenticeship to a higher job classification.

In 2003, the executive director of the AHA, John Zambarano, implemented changes to the duties of its maintenance department workers. Pursuant to these changes, Fernandes was required to

perform more diversified work that he believed was consistent with the position of maintenance mechanic I, which required a greater skill level and paid a higher salary than he was receiving.[2]  Notwithstanding Fernandes's enhanced job responsibilities, the AHA continued to pay him the salary of a maintenance mechanic II.  On various occasions over the years of his tenure, Fernandes complained to his supervisor, Mark Johnson, and to Zambarano that he was misclassified and that, based on his duties, he properly should be classified as a maintenance mechanic I with the commensurate wage rate.  His complaints were unsuccessful.

Finally, on April 28, 2009, Fernandes filed a "Non-Payment of Wage and Workplace Complaint Form" with the Attorney General's office.  He alleged that, based on his job responsibilities, he had been misclassified as a maintenance mechanic II and was owed wages commensurate with the position of maintenance mechanic I.  Fernandes informed Johnson that he had filed this complaint, and he subsequently requested and received from Dianne Precourt, AHA's financial coordinator, copies of his job description and the prevailing wage rates.  One month later,

---

[2] In accordance with the provisions of G. L. c. 121B, § 29, the Commissioner of Labor and Industries establishes minimum wage rates for specified housing authority employees that are based on their job classifications.  For example, on April 1, 2009, the minimum hourly base rate for a maintenance mechanic II increased from $20.51 to $21.32.  The minimum hourly base rate for a maintenance mechanic I increased from $20.76 to $21.83.

on May 29, 2009, Zambarano called Fernandes into a meeting and informed him that, based on the seniority of the personnel on the maintenance staff, Fernandes was being laid off due to budgetary constraints. He was given two weeks of severance pay. The present action ensued.

2. Jurisdiction over Fernandes's claims. The AHA contends in this appeal that a housing authority employee can seek redress for an adverse employment action only through administrative proceedings under the civil service law, G. L. c. 31, §§ 41-45, and not through judicial proceedings in the Superior Court. In the AHA's view, Fernandes's complaint essentially alleged that he had been subjected to a decrease in compensation and then terminated without "just cause," G. L. c. 31, § 41, which are matters within the exclusive purview of the commission. Consequently, the AHA continues, the Superior Court lacked subject matter jurisdiction over Fernandes's original action and, therefore, the judge should have granted AHA's motion for judgment notwithstanding the verdict under the doctrine of primary jurisdiction. We disagree.[3]

_____

[3] "[T]he question of subject matter jurisdiction may be raised by the parties at any time or by the court on its own motion." Maxwell v. AIG Domestic Claims, Inc., 460 Mass. 91, 99 (2011). Here, the Attleboro Housing Authority (AHA) raised the issue of jurisdiction in a memorandum of law filed in connection with its motion for judgment notwithstanding the verdict. Where a determination is made that a court lacked subject matter jurisdiction over asserted claims, its judgment is void. See ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 605 (2000).

     The doctrine of primary jurisdiction arises in cases where a plaintiff, "in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy" that includes an issue within the special competence of an agency.  Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. 217, 220 (1979).  See Everett v. 357 Corp., 453 Mass. 585, 609 (2009); Leahy v. Local 1526, Am. Fed'n of State, County & Mun. Employees, 399 Mass. 341, 345-346 & n.3 (1987).  See generally A.J. Cella, Administrative Law and Practice § 1725 (1986 & Supp. 2014).  "Where an agency has statutorily been granted exclusive authority over a particular issue, the doctrine of primary jurisdiction requires that a court refer the issue to the agency for adjudication in the first instance" (emphasis in original).  Blauvelt v. AFSCME Council 93, Local 1703, 74 Mass. App. Ct. 794, 801 (2009), citing Everett v. 357 Corp., supra at 609-610.  See Puorro v. Commonwealth, 59 Mass. App. Ct. 61, 64 (2003).  The underlying rationale is that a court must be careful not to invade the province of an administrative agency before it has begun to exercise its authority in a particular case because judicial interference effectively would transfer to the courts a matter entrusted to the agency by the Legislature and would result in a substitution of the court's judgment for that of the agency.  See Wilczewski v. Commissioner of the Dep't of Envtl.

Quality Eng'g, 404 Mass. 787, 792 (1989).  The doctrine of primary jurisdiction has particular applicability when "an action raises a question of the validity of an agency practice . . . or when the issue in litigation involves 'technical questions of fact uniquely within the expertise and experience of an agency'" (citations omitted).  Murphy v. Administrator of the Div. of Personnel Admin., supra at 221, quoting Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 304 (1976).  See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 62 (1999).

This court has noted that "[a] determination that primary jurisdiction over an issue in a civil case resides with an administrative agency requires that the case be stayed or dismissed to permit the administrative agency the opportunity to issue its determination."  Everett v. 357 Corp., 453 Mass. at 610 n.32.  When an entire controversy is within the exclusive jurisdiction of an administrative agency, the doctrine of primary jurisdiction "ordinarily results in dismissal of judicial proceedings begun without prior resort to the agency." J. & J. Enters., Inc. v. Martignetti, 369 Mass. 535, 540 (1976). However, "[w]here at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the

jurisdiction of an administrative or regulatory agency." Austin Lakes Joint Venture v. Avon Utils., Inc., 648 N.E.2d 641, 646 & n.5 (Ind. 1995). See Everett v. 357 Corp., supra at 611 n.34.

We proceed to consider the exclusivity of the commission's jurisdiction with respect to Fernandes's claims. The AHA argues that because G. L. c. 121B, § 29, explicitly provides civil service protections to tenured housing authority employees, the Legislature intended to confer jurisdiction solely on the commission to resolve complaints about purported adverse employment actions. We conclude that nothing in the civil service law suggests that Fernandes was required to bring his action before the commission where his claims alleged violations of the Wage Act, G. L. c. 149, §§ 148 and 148A.[4]

General Laws c. 121B, § 29, provides that "[n]o employee of any housing authority, except an employee occupying the position of executive director, who has held his office or position . . . within the authority for a total period of five years of uninterrupted service, shall be involuntarily separated therefrom except subject to and in accordance with the provisions of [G. L. c. 31, §§ 41-45,] to the same extent as if

---

[4] Even if Fernandes had not voluntarily withdrawn count two of his complaint, see note 1, supra, the Superior Court would not have been divested of subject matter jurisdiction. The matter simply could have been stayed while the Civil Service Commission (commission) issued a decision on the issues raised in count two. See Everett v. 357 Corp., 453 Mass. 585, 609-610 & n.32 (2009).

said office or position were classified under said chapter." In turn, G. L. c. 31, § 41, states that a tenured employee shall not be discharged or laid off except for "just cause" and except in accordance with specific procedural requirements set forth in the first paragraph of § 41. Pursuant to G. L. c. 31, § 42, "[a]ny person who alleges that an appointing authority has failed to follow the requirements of [§ 41] in taking action which has affected his employment or compensation may file a complaint with the commission" (emphasis added).[5] In accordance with G. L. c. 31, § 43, "[i]f a person aggrieved by a decision of an appointing authority made pursuant to [§ 41] shall . . . appeal in writing to the commission, he shall be given a hearing." Thereafter, "[a]ny party aggrieved by a final order or decision of the commission . . . may institute proceedings for judicial review in the superior court." G. L. c. 31, § 44. Finally, a tenured employee who has incurred attorney's fees in the defense of an unwarranted adverse employment action "shall be reimbursed for such expense," subject to specified limitations. G. L. c. 31, § 45. In essence, G. L. c. 121B, § 29, affords housing authority employees, like Fernandes, the protections of the civil service system.

---

[5] The term "[a]ppointing authority" is defined as "any person, board or commission with power to appoint or employ personnel in civil service positions." G. L. c. 31, § 1.

"The fundamental purpose of the civil service system is to guard against political considerations, favoritism, and bias in governmental hiring and promotion." Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 259 (2001). It also is designed to "protect efficient public employees" from partisanship and arbitrary punishment. Murray v. Second Dist. Court of E. Middlesex, 389 Mass. 508, 514 (1983), quoting Debnam v. Belmont, 388 Mass. 632, 635 (1983). See Dedham v. Labor Relations Comm'n, 365 Mass. 392, 396-397 (1974). The civil service system accomplishes its purpose by mandating that an adverse employment action be taken only for "just cause," and by imposing on an appointing authority the obligation to comply with procedural requirements that are intended to protect the rights of a tenured employee. "If the commission finds that the appointing authority has failed to follow [the] requirements [of G. L. c. 31, § 41,] and that the rights of [any] person [filing a complaint] have been prejudiced thereby, the commission shall order the appointing authority to restore said person to his employment immediately without loss of compensation or other rights." G. L. c. 31, § 42.

The aforementioned language of G. L. c. 121B, § 29, and the provisions of G. L. c. 31, §§ 41-45, clearly are meant to protect tenured employees' rights, but nothing therein dictates that the only avenue by which a housing authority employee who

claims that he has been paid inadequate wages and involuntarily separated from his employment can seek redress is through administrative proceedings before the commission. To the contrary, the language in G. L. c. 31, § 42, stating that an aggrieved employee "may" file a complaint with the commission strongly suggests that the Legislature has not granted exclusive authority over all challenged employment actions to the commission. See Salem v. Massachusetts Comm'n Against Discrimination, 404 Mass. 170, 172-174 (1989) (Massachusetts Commission Against Discrimination and Civil Service Commission simultaneously resolved separate complaints filed by individual alleging failure to hire based on race); Dedham v. Labor Relations Comm'n, 365 Mass. at 400-404 (Civil Service Commission did not have exclusive jurisdiction over suspension of employee where claim of prohibited labor practice also could be brought before Labor Relations Commission). In circumstances where, as here, an employee's claims focus not on an employer's failure to satisfy the requirements of G. L. c. 31, § 41, but, rather, on the employer's violation of an entirely different and separate statutory mandate, the employee is not required to proceed before the commission, but may commence a civil action.

Of critical significance in this case is the nature of Fernandes's claims. The AHA characterizes those claims within the framework of the civil service law, contending that

determinations whether Fernandes was subjected to a retaliatory layoff or a "lower[ing] in rank or compensation," G. L. c. 31, § 41, involve a "just cause" analysis. However, contrary to the AHA's view of Fernandes's complaint, the substance of his interrelated claims pertained to alleged violations of the Wage Act. More specifically, Fernandes asserted that the AHA intentionally misclassified his position and thereby failed to pay him the wages to which he was entitled, see G. L. c. 149, § 148,[6] and that the AHA then terminated his employment in retaliation for his filing of a nonpayment of wage complaint with the Attorney General's office, see G. L. c. 149, § 148A.[7] Because the central thrust of Fernandes's action was the AHA's purported violations of the Wage Act, and not its alleged failure to act with "just cause," Fernandes elected to seek redress for the harm he sustained by filing an action in the Superior Court, rather than by commencing administrative

---

[6] General Laws c. 149, § 148, directs "[e]very" employer to pay an employee "the wages earned" by that employee at regular intervals and within a fixed number of days after "the termination of the pay period during which the wages were earned." When an employee "has completed the labor, service, or performance required of him . . . he has 'earned' his wage." Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 492 (2011).

[7] General Laws c. 149, § 148A, states that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of [G. L. c. 149]." Further, "[a]ny employer who discharges . . . any employee because such employee has made a complaint to the attorney general or any other person . . . shall have violated this section and shall be punished." G. L. c. 149, § 148A.

proceedings before the commission. Nothing in the civil service law precluded him from doing so.[8] See generally Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719-720 (2002) (we interpret statutory language according to intent of Legislature ascertained from its words considered in context of statute's purpose).

Similarly, nothing in the Wage Act excludes a housing authority employee from its protections or requires that such employee pursue relief from alleged wrongful conduct under the civil service system. "The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.'" Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012), quoting Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. at 720. See Lipsitt v. Plaud, 466 Mass. 240, 245 (2013). It was designed, among other purposes, "to protect wage earners from the long-term detention of wages by unscrupulous employers." Melia v. Zenhire, Inc., supra, quoting Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F. Supp. 2d 164, 167 (D. Mass. 2000). To ensure that employees are not penalized for asserting their rights to earned

---

[8] The AHA's reliance on Camerlengo v. Civil Serv. Comm'n, 382 Mass. 689 (1981), and Cambridge Hous. Auth. v. Civil Serv. Comm'n, 7 Mass. App. Ct. 586 (1979), to support its contention that the commission has exclusive jurisdiction over an employee's claims of unlawful termination is unavailing. As correctly pointed out by the judge below, those cases did not involve an adverse employment action that allegedly violated an employee's independent statutory rights, such as those under the Wage Act. See Camerlengo v. Civil Serv. Comm'n, supra at 689-690; Cambridge Hous. Auth. v. Civil Serv. Comm'n, supra at 587.

wages, the Legislature included an antiretaliation clause in the Wage Act, G. L. c. 149, § 148A, to protect employees, like Fernandes, who complain about violations of the statute. See Smith v. Winter Place LLC, 447 Mass. 363, 367-368 (2006); Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 704 (2013).

When the Wage Act was first enacted in 1886, it "was initially limited to employees of a 'manufacturing, mining or quarrying, mercantile, railroad, street railway, telegraph, telephone and municipal corporation and every incorporated express company and water company.'" Melia v. Zenhire, Inc., 462 Mass. at 171 n.6, quoting St. 1886, c. 87, § 1. Since that time, however, the Legislature has broadened the scope of the Wage Act by imposing its provisions on "[e]very person having employees in his service." G. L. c. 149, § 148. See Lipsitt v. Plaud, 466 Mass. at 245 & n.8; Melia v. Zenhire, Inc., supra. An employee claiming to be aggrieved by a violation of G. L. c. 149, § 148 or 148A, may bring a private civil action ninety days after filing a complaint with the Attorney General, or sooner if the Attorney General assents to such suit, for injunctive relief, damages, and any lost wages and other benefits.[9] G. L. c. 149, § 150. See Depianti v. Jan-Pro

_____

[9] The AHA attaches significance to the fact that an investigator with the Attorney General's fair labor and business practices division told Fernandes that the Attorney General lacked statutory authority over complaints from housing authority employees alleging underpayment or nonpayment of

Franchising Int'l, Inc., 465 Mass. 607, 611-612 (2013). "An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." G. L. c. 149, § 150. See Melia v. Zenhire, Inc., supra at 171 n.8. See also Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 178 (2000) (treble damages are punitive in nature, authorized only where allowed by statute, and appropriate where defendant's conduct is outrageous or indifferent to rights of others). There is no provision in the Wage Act stating that if an aggrieved employee has been afforded civil service protections, that employee must proceed before the commission, rather than commencing a civil action. See Depianti v. Jan-Pro Franchising Int'l, Inc., supra at 613-614 (filing requirement of G. L. c. 148, § 150, "triggers no mandatory agency investigation or administrative adjudicatory action").

Although both the civil service law and the Wage Act address wrongful conduct arising in the employment context, they

---

wages. As the judge below correctly pointed out, the investigator's understanding of the Attorney General's interpretation of the Wage Act, which was not equivalent to a formal agency interpretation, was not entitled to deference. Contrast Smith v. Winter Place LLC, 447 Mass. 363, 367-368 (2006) (deference given to formal advisory opinion of Attorney General's office). Further, "the duty of statutory interpretation ultimately is for the courts." Spaniol's Case, 466 Mass. 102, 106 (2013). See Electronic Data Sys. Corp. v. Attorney Gen., 454 Mass. 63, 69 (2009).

have distinct purposes and, as a consequence, provide different remedies for the violation of their statutory mandates. Notwithstanding the fact that Fernandes was a housing authority employee, we discern no intent on the part of the Legislature to preclude him from bringing an action in the Superior Court specifically to vindicate his rights under the Wage Act. Although the Commissioner of Labor and Industries is authorized under G. L. c. 121B, § 29, to "determine rates of wages" for each classification of work performed by laborers for a housing authority, neither that statutory provision nor G. L. c. 31, §§ 41-45, address the unlawful withholding of earned wages by an employer. It is the Wage Act that speaks to and provides remedies for such prohibited employer conduct. G. L. c. 149, §§ 148, 150. In a similar vein, the Legislature clearly intended to sanction severely those employers who retaliate against employees who complain about purported wage violations. See G. L. c. 149, §§ 148A, 150. That occurs under the Wage Act. See id. Fernandes's claims are not ones that require the special expertise of the commission to resolve. See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. at 62. See also Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. at 221. Moreover, their resolution by the Superior Court does not interfere with the development and administration of policies under the civil service law. See id.

at 222.  For all of the foregoing reasons, we conclude that the Superior Court had subject matter jurisdiction over Fernandes's claims.  The judge did not err in denying the AHA's motion for judgment notwithstanding the verdict.

3.  <u>Reinstatement to employment</u>.  As we have discussed, G. L. c. 149, § 150, provides that an employee claiming to be aggrieved by a violation of G. L. c. 149, §§ 148 or 148A, may bring a civil action "for injunctive relief, for any damages incurred, and for any lost wages and other benefits."  Fernandes contends that, given the jury's verdicts, the judge erred in denying his motion for reinstatement to the position of maintenance mechanic I with full seniority as if he had not been terminated from employment on May 29, 2009.  He argues that the "injunctive relief" language in G. L. c. 149, § 150, permits the equitable remedy of reinstatement.  We disagree, and conclude that reinstatement to employment is not an available remedy for violations of the Wage Act.

Fernandes analogizes the "injunctive relief" language in the Wage Act, G. L. c. 149, § 150, to language in the Massachusetts antidiscrimination statute, G. L. c. 151B, which provides that "[a]ny person claiming to be aggrieved by a practice made unlawful under this chapter" may bring "a civil action for damages or injunctive relief or both in the superior or probate court."  G. L. c. 151B, § 9.  Relying on <u>Stonehill</u>

College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 585 (Sosman, J., concurring), cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004), Fernandes asserts that while the language of G. L. c. 151B, § 9, like the Wage Act, does not specifically identify reinstatement as a form of injunctive relief, courts have recognized that reinstatement is a proper remedy under G. L. c. 151B.

We acknowledge that reinstatement is an available remedy under G. L. c. 151B, but it is one that is expressly permitted by the Massachusetts Commission Against Discrimination (MCAD) in the context of an administrative proceeding under § 5.  General Laws c. 151B, § 5, states that when the MCAD finds that a respondent has engaged in any unlawful practice as defined in G. L. c. 151B, § 4, the MCAD has broad authority to take affirmative action to remedy such unlawful practice, "including but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, . . . as, in the judgment of the [MCAD], will effectuate the purposes of this chapter" (emphasis added).  See Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. at 563 (primary purpose of administrative proceeding before MCAD is to vindicate public's interest in reducing workplace discrimination by deterring and punishing unlawful conduct by employers).  We have said that

G. L. c. 151B "provides an aggrieved party with 'two largely independent avenues for redress of violations of [G. L. c. 151B], one through the MCAD (G. L. c. 151B, §§ 5-6), and the other in the courts (G. L. c. 151B, § 9).'" Thurdin v. SEI Boston, LLC, 452 Mass. 436, 441-442 (2008), quoting Stonehill College, supra at 565. See Brunson v. Wall, 405 Mass. 446, 452 (1989). As such, "[t]he remedies available under G. L. c. 151B, §§ 5 and 9, differ." Thurdin v. SEI Boston, LLC, supra at 442 n.9. The Legislature plainly has articulated the availability of reinstatement as a remedy for employment discrimination in G. L. c. 151B, § 5.

Similarly, in other circumstances where the Legislature has authorized reinstatement as a remedy for unlawful discharge, it has done so expressly. See, e.g., G. L. c. 12, § 5J (3) (where employee discharged for disclosing information to government or law enforcement agency under Massachusetts False Claims Act, court may order "reinstatement with the same seniority status [such] employee . . . would have had but for the discrimination"); G. L. c. 149, § 185 (d) (where employee discharged in retaliation for disclosing information pursuant to Massachusetts whistleblower statute, court may "reinstate the employee to the same position held before the retaliatory action, or to an equivalent position"); G. L. c. 150E, § 11 (d) (where employer commits prohibited practice under public

employees collective bargaining statute, "hearing officer shall order the reinstatement with or without back pay of an employee discharged or discriminated against in violation of the [statute]"). It is well established that "we do not 'read into [a] statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.'" General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), quoting King v. Viscoloid Co., 219 Mass. 420, 425 (1914). See Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 9 (1998) (court will not add language to statute that Legislature could have, but did not, include). The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes. See Thomas v. Department of State Police, 61 Mass. App. Ct. 747, 754 (2004). See also Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003), quoting 2A N.J. Singer, Sutherland Statutory Construction § 46.06, at 194 (6th ed. rev. 2000) ("[W]here the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").

Here, nothing in the Wage Act, G. L. c. 149, § 150, permits a court to order the reinstatement of an employee who has been aggrieved by an employer's unlawful conduct in violation of G. L. c. 149, §§ 148 or 148A. We are not persuaded that the

Legislature's use of the phrase "injunctive relief" in § 150 encompasses the remedy of reinstatement, particularly where the availability of such a remedy under other statutory provisions has been expressly articulated by the Legislature.[10]  Moreover, we decline to engraft onto the Wage Act remedies that are available to an aggrieved employee under the antidiscrimination statute, G. L. c. 151B.  When Fernandes elected to commence an

---

[10] Fernandes's reliance on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2012) (Title VII), and on the Americans with Disabilities Act, 42 U.S.C. § 12112 (2012) (ADA), to support his claim for reinstatement is similarly unavailing.  Unlike the Wage Act, Title VII explicitly authorizes reinstatement as a remedy for unlawful employment practices, and the ADA expressly permits reinstatement as a remedy for discrimination.  Title VII states, in relevant part, that "[i]f the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . . , the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate" (emphasis added).  42 U.S.C. § 2000e-5(g)(1).  See Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 43 (1st Cir. 2003) (reinstatement "most efficiently" advances goals of Title VII by making employees whole and by deterring future discriminatory conduct by employers); Selgas v. American Airlines, Inc., 104 F.3d 9, 12 (1st Cir. 1997) (remedial scheme in Title VII designed to make victims of discrimination whole through use of equitable remedies, including reinstatement).  In like manner, the ADA provides that the remedies set forth in, among other sections, 42 U.S.C. § 2000e-5 shall be the remedies available to "any person alleging discrimination on the basis of disability in violation of any provision of [the ADA] . . . concerning employment."  42 U.S.C. § 12117(a) (2012).  See Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 19 (1st Cir. 1999), quoting Selgas v. American Airlines, Inc., supra at 13 (reinstatement is "overarching preference" among all equitable remedies under ADA).  See also 42 U.S.C. § 12203(c) (2012) (remedies under 42 U.S.C. § 12117 available to aggrieved persons when employer engages in retaliation or coercion).

action in the Superior Court, rather than before the commission, to seek redress for the harm he purportedly sustained as a consequence of the AHA's violations of the Wage Act, he also effectively elected the remedies that would be afforded under that statutory scheme.  Contrast G. L. c. 31, § 42 (reinstatement may be available for illegal discharge under civil service law).  We conclude that the judge properly denied Fernandes's motion for reinstatement.

4.  Additur.  Fernandes contends that the judge abused his discretion in denying Fernandes's motion for a new trial on damages or, in the alternative, for additur.  Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974).  He asserts that, based on the testimony of the AHA's financial coordinator, Dianne Precourt, the proper amount of his lost wages and benefits was $193,750.[11]  However, the jury determined, after finding that the AHA had retaliated against Fernandes, that his lost wages and benefits amounted to $130,000.  In Fernandes's view, because the evidence presented at trial regarding his damages was uncontroverted, the jury's award was unreasonable and inexplicable, and, therefore, the judge should have granted an additur.  We disagree.

---

[11] According to Fernandes, Dianne Precourt testified that Fernandes's wages and benefits equated to $75,000 per year. This sum was the equivalent of $6,250 per month.  At trial, Fernandes testified that he did not earn any income from the time his severance pay ended (June 15, 2009) until the jury rendered its verdict (January 20, 2012).  Therefore, when Fernandes multiplied $6,250 per month by thirty-one months, the result was $193,750.

Additur serves the beneficial goal of "securing substantial justice between the parties without the burdensome costs, delays and harassments of new trials." Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 626 (2009), quoting Freeman v. Wood, 379 Mass. 777, 782 (1980). "An additur is appropriate where the judge concludes that the verdict is sound except for the amount of damages and that the amount of damages is unreasonable." Id. at 629-630, quoting Service Publs., Inc. v. Goverman, 396 Mass. 567, 580 (1986). See DiBiase v. Rowley, 33 Mass. App. Ct. 928, 930 (1992) (plaintiff entitled to additur where damages awarded by jury greatly disproportionate to proven injury). "An unduly slim verdict, however, may signal the existence of other defects in the work of the jury, or mistakes by the judge. In such a case additur would not be appropriate, and a simple new trial would be called for." Freeman v. Wood, supra at 785-786. See Proctor v. North Shore Community Arts Found., 47 Mass. App. Ct. 372, 376 (1999). "[T]he allowance of a motion for a new trial based upon an inadequate . . . award of damages, and the direction of an addition . . . , rests in the sound discretion of the judge." Loschi v. Massachusetts Port Auth., 361 Mass. 714, 715 (1972). See Baudanza v. Comcast of Mass. I, Inc., supra at 630.

Here, the judge stated that although the $130,000 awarded by the jury in lost wages was less than the amount calculated by

Fernandes, it was not unreasonable.  Further, he continued, the award was not "unduly slim" so as to signal the existence of other defects in the jury's work that would necessitate a new trial on damages.  Freeman v. Wood, 379 Mass. at 785.  Accordingly, based on a survey of the entire case, the judge denied Fernandes's motion for a new trial on damages or, alternatively, for an additur.  We conclude that the judge did not abuse his discretion.

Fernandes relies on the testimony of Precourt to support his contention that the jury's award of damages was unreasonably low.  However, Fernandes's characterization of that testimony does not match its substance.  At trial, Precourt stated that, in 2009, she put together information as to how much money the AHA would save by laying off one worker.  She determined that the value or cost of the employee to the AHA each year "probably would have totaled about $75,000."  Contrary to Fernandes's understanding, this testimony was not exactly the same as saying that, as a consequence of being laid off, Fernandes lost wages and benefits totaling $75,000 per year.  Moreover, Precourt's testimony was not the only evidence presented to the jury pertaining to the issue of damages.  Also admitted in evidence were payroll documents setting forth Fernandes's wages over several years.  As reflected on the pay stub for the period ending May 3, 2009, Fernandes's gross weekly pay was $966.76.

The jury could have determined that this amount would equate to approximately $50,271.52 per year, or $4,189.29 per month.  If the jury had multiplied that sum by thirty-one months, see note 11, supra, the total would have been $129,867.99 in lost wages and benefits, which is very close to the $130,000 in damages awarded by the jury for the AHA's retaliatory conduct.  The judge properly denied Fernandes's motion for a new trial on damages or, in the alternative, for an additur.

5.  Appellate attorney's fees.  In his reply brief, Fernandes has requested reasonable attorney's fees and costs. General Laws c. 149, § 150, states that an aggrieved employee who prevails in an action alleging violations of G. L. c. 149, §§ 148 or 148A, "shall be awarded . . . the costs of the litigation and reasonable attorneys' fees."  The judge below awarded Fernandes such fees and costs in connection with the proceedings before the Superior Court.  We now conclude that Fernandes is statutorily entitled to recover reasonable appellate attorney's fees and costs with respect to the claims on which he prevailed.  See Yorke Mgt. v. Castro, 406 Mass. 17, 19 (1989).  He is directed to file with the clerk of this court materials detailing and supporting his request for such fees and costs within fourteen days of the issuance of the rescript in this case.  See Fabre v. Walton, 441 Mass. 9, 10 (2004).  The

AHA will be afforded fourteen days to respond, and the court will then enter an appropriate order.  See id. at 10-11.

6.  Conclusion.  For the foregoing reasons, the judgment of the Superior Court is affirmed.

So ordered.