NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12817

JOHN DOE  vs.  BOARD OF REGISTRATION IN MEDICINE.


     Suffolk.     February 11, 2020. - September 1, 2020.

 Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Board of Registration in Medicine.  Doctor.  Criminal
     Records.  Criminal Offender Record
     Information.  Administrative Law, Proceedings before
     agency, Evidence.



     Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 14, 2019.

     The case was reported by Budd, J.


     Michael David Tauer (Andrew L. Hyams also present) for the petitioner.
     Julie E. Green, Assistant Attorney General, for the respondent.
     Pauline Quirion & Christopher Westfall, for Greater Boston Legal Services & another, amici curiae, submitted a brief.


     LOWY, J.  The petitioner, John Doe, is a physician licensed by the board of registration in medicine (board).  This case requires us to determine what effect, if any, sealing a criminal record under G. L. c. 276, § 100C, has on the board's statutory

obligations to discipline licensed physicians under G. L. c. 112, § 5, including (1) whether the board may use a record sealed under § 100C as the basis for discipline, and (2) if so, to what extent the board may make that record's contents available to the public.  We conclude that the board may use such a record in its disciplinary proceedings.  We also conclude, however, that where a record sealed under § 100C forms the basis for the board's final disciplinary decision, the board is statutorily prohibited from making the contents of that record available to the public.  However, should the board possess independent evidence of the criminal case or the criminal conduct underlying a record sealed under § 100C, separate and distinct from the record itself, and that independent evidence forms the basis for a final disciplinary decision, the board is not prohibited from making such evidence publicly available.

Background.  1.  Facts.  The relevant facts are undisputed. On March 9, 2017, Doe was arrested and charged with a single misdemeanor count of engaging in sexual conduct for a fee, in violation of G. L. c. 272, § 52A.  The following month, Doe informed his employer of the misdemeanor charge.  In June 2017, Doe admitted to sufficient facts, and the court continued his case without a finding.  Approximately two months later, Doe self-reported his arrest, charge, and disposition to the board,

and thereafter, the board notified Doe that he was under investigation.

In September 2017, the court dismissed Doe's criminal case following his completion of the court-imposed conditions. Two days later, Doe filed an application to renew his medical license, which was set to expire in November 2017.[1] As required, Doe disclosed the criminal charge and its disposition in his application and included a copy of the criminal docket and police reports. See 243 Code Mass. Regs. § 2.04(10), (14)(b) (2020).

In May 2018, as he cooperated with the board's investigation, but without the board's knowledge, Doe petitioned the Cambridge Division of the District Court Department to seal his criminal case under § 100C. The following month, the board's complaint committee recommended that the board issue a statement of allegations,[2] but also expressed interest in the possibility of a consent order to eliminate the need for adjudicatory proceedings, so long as the consent order met certain requirements, including a reprimand. The board then

---

[1] Physicians are required to renew their licenses every two years based on the physician's birthday. See G. L. c. 112, § 2.

[2] A statement of allegations is defined as "a paper served by the [b]oard upon a licensee ordering the licensee to appear before the [b]oard for an adjudicatory proceeding and show cause why the licensee should not be disciplined." 243 Code Mass. Regs. § 1.01(2) (2012).

sent Doe a draft consent order based on Doe's engagement in "conduct that undermines the public confidence in the integrity of the medical profession." See Raymond v. Board of Registration in Med., 387 Mass. 708, 713 (1982); Levy v. Board of Registration & Discipline in Med., 378 Mass. 519, 527-528 (1979). The draft consent order also included the information contained in Doe's criminal record.

In July 2018, a judge in the District Court ordered Doe's criminal record sealed under G. L. c. 276, § 100C, and Commonwealth v. Pon, 469 Mass. 296, 316-319 (2014) (sealing order).[3] Doe notified the board of the sealing order a couple of weeks later and requested that the board close his disciplinary matter without further action, contending that any further action would violate the sealing order. The board declined Doe's request. In April 2019, Doe requested that, if the board elected to discipline him, it refrain from making that discipline public until Doe had the opportunity to seek judicial review of the question whether the board's use or disclosure of the basis for the discipline violated the sealing order. On May 3, 2019, the board responded that it intended to hear the matter later that month, and that it would "vote after listening and

_____

[3] In Pon, we enumerated several interests judges must balance when considering whether to seal a criminal record pursuant to G. L. c. 276, § 100C. See Commonwealth v. Pon, 469 Mass. 296, 316-319 (2014).

giving due consideration to both sides.  Therefore, you should take whatever action you feel is appropriate."[4]  Doe filed an emergency petition for writ of certiorari with a single justice of the county court on May 14, 2019.  The single justice, in turn, reserved and reported the case to the full court.

2.  Statutory background.  This case requires us to analyze the interplay between the board's statutory disciplinary obligations, see G. L. c. 112, § 5, and the legislative mandate to shield certain criminal records from public view pursuant to both the sealing statutes, G. L. c. 276, §§ 100A-100C, and the criminal offender record information act (CORI act), see G. L. c. 6, §§ 167-178, which incorporates the sealing statutes.  See St. 2010, c. 256, §§ 3, 131, 132.

a.  The sealing statutes.  The sealing statutes, G. L. c. 276, §§ 100A-100C, enacted in the early 1970s, govern the procedure by which former criminal defendants may seek to seal certain criminal records, as well as the effect of such sealing. See G. L. c. 276, § 100A, inserted by St. 1971, c. 686; G. L. c. 276, § 100B, inserted by St. 1972, c. 404; G. L. c. 276,

---

[4] Although the board reevaluated its position shortly before oral argument, agreeing not to disclose any sealed information during the pendency of its disciplinary proceedings, as well as for the ten days following its final determination, to provide Doe with the opportunity to seek judicial review, the board's prior position unfairly left Doe with no opportunity to appeal before the board publicly disclosed the contents of his sealed criminal record.

§ 100C, inserted by St. 1973, c. 322. The sealing statutes sought to promote rehabilitation and reintegration by protecting former criminal defendants "from unnecessary and overbroad dissemination of criminal record information." Commonwealth v. Vickey, 381 Mass. 762, 765 (1980). See Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 270 (2020), quoting Pon, 469 Mass. at 307 ("[s]ealing is a central means by which to alleviate the potential adverse consequences in employment, volunteering, or other activities that can result from the existence of such records").

Sections 100A and 100B provide for automatic sealing of certain criminal records, upon request, after a requisite period of time has passed without any additional criminal conduct. See G. L. c. 276, §§ 100A (criminal court appearances and dispositions), 100B (delinquency court appearances).[5]

---

[5] Under G. L. c. 276, § 100A, the commissioner of probation "shall comply" with an individual's request to seal his or her criminal record so long as (1) the person's misdemeanor crime, including any incarceration or custody, occurred at least three years before the request; (2) the person's felony crime, including any incarceration or custody, occurred at least seven years before the request; (3) "the person had not been found guilty of any criminal offense within the commonwealth in the case of a misdemeanor, [three] years before the request, and in the case of a felony, [seven years before request, except motor vehicle offenses in which the penalty does not exceed a fine of [fifty dollars];" (4) the petitioner asserts that he has not been convicted in any other State, except motor vehicle offenses, as stated above, and has not been imprisoned for a misdemeanor, within the preceding three years, and for a felony, within the preceding seven years; and (5) "the person's record

Section 100C, however, does not contain a temporal requirement, but rather permits a former criminal defendant, whose criminal case resulted in a nolle prosequi or a dismissal, to seal his or her criminal record upon a judge's discretionary determination that "substantial justice would best be served" by such sealing.[6]  See G. L. c. 276, § 100C.  To meet that standard, a defendant must establish that good cause exists for sealing

_____

does not include convictions of offenses other than those to which this section applies."

     Under G. L. c. 276, § 100B, the commissioner of probation "shall comply" with an individual's request to seal his or her delinquency record so long as (1) any court appearance or disposition within the record the individual requests to be sealed occurred at least three years before the request; (2) "that said person has not been adjudicated delinquent or found guilty of any criminal offense within the commonwealth in the three years preceding such request, except motor vehicle offenses in which the penalty does not exceed a fine of fifty dollars nor been imprisoned under sentence or committed as a delinquent within the commonwealth within the preceding three years;" and (3) the petitioner asserts that he has not been adjudicated or convicted in any other State, except motor vehicle offenses, as stated above, and "has not been imprisoned under sentence or committed as a delinquent in any state or county within the preceding three years."

     [6] Section 100C also governs criminal cases "wherein the defendant has been found not guilty by the court or jury, or a no bill has been returned by the grand jury, or a finding of no probable cause has been made by the court."  G. L. c. 276, § 100C.  The statute requires those records to be automatically sealed unless the defendant requests otherwise.  See id.

his or her record, thus "overriding . . . the general principle of publicity."  Pon, 469 Mass. at 313.[7]

Moreover, §§ 100A and 100C permit an employment applicant with a sealed record pursuant to either statute to answer "'no record' with respect to an inquiry [t]herein relative to prior arrests or criminal court appearances."  G. L. c. 276, §§ 100A, 100C.[8]

b.  The CORI act.[9]  In 1972, the Legislature enacted the CORI act to centralize both the collection and the dissemination of criminal offender record information.  See St. 1972, c. 805, § 1; Boston Globe Media Partners LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 282 (2020) (Boston Globe).  Criminal offender record information is defined, in relevant part, as "records and data in any communicable form compiled by a Massachusetts criminal justice agency," concerning an identifiable individual and relating to a criminal matter, including an arrest, criminal charge, and pre- and posttrial

---

[7] To determine whether the defendant has established good cause, judges balance the interests at stake, taking into account a myriad of factors.  See Pon, 469 Mass. at 314-319 (discussing factors).

[8] The Legislature amended this provision in 2018, as we discuss infra.  See St. 2018, c. 69, §§ 186-194.

[9] For thorough discussions of the CORI act, see Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 282-286 (2020), and Pon, 469 Mass. at 303-308.

proceedings.  G. L. c. 6, § 167.  The CORI act established the criminal history systems board, which later became the Department of Criminal Justice Information Services (DCJIS), and tasked it with overseeing the State's first unified criminal offender record information management system.  See St. 1972, c. 805, § 1; St. 2010, c. 256, §§ 1, 135.  The CORI act also strictly limited access to criminal offender record information to only criminal justice agencies and other entities with statutorily-authorized access.  See Boston Globe, supra at 282, citing St. 1972, c. 805, § 1.

In 2010, the Legislature amended the CORI act, creating a tiered system of access based on the requestor's identity (2010 amendments).  See Boston Globe, 484 Mass. at 285, citing St. 2010, c. 256, § 21, and 803 Code Mass. Regs. § 2.05(2) (2017); G. L. c. 6, § 172 (a).  Notably here, the Legislature incorporated the sealing statutes into the CORI act's statutory scheme, thereby (1) excluding sealed records from certain categories of criminal record offender information; (2) specifying that only those entities entitled to the highest level of access were permitted to access sealed records; (3) shortening the waiting periods to seal a record under § 100A; and (4) expanding § 100C to permit judges to seal all dismissed cases, even after an order of probation has been terminated.  See St. 2010, c. 256, §§ 3, 21; G. L.

c. 276, § 100A, as amended by St. 2010, c. 256, § 128; G. L. c. 276, § 100C, as amended by St. 2010, c. 256, § 131.  Overall, although the 2010 amendments expanded access to certain requestors, including employers and landlords, "for limited use," they also "broaden[ed] the scope of the sealing provisions to enable more individuals to shield their records from public view."  Pon, 469 Mass. at 297.

In 2018, the Legislature again amended the CORI act (2018 amendments), as well as the sealing statutes, in an effort to enhance opportunities for individuals who had previously been charged or sentenced as an adult in juvenile court.  See St. 2018, c. 69.  The amendments further reduced waiting periods to seal criminal records under § 100A and permitted professional licensure applicants with records sealed under § 100C to answer "no record" on their license applications.  St. 2018, c. 69, §§ 186, 187, 193, 194.  In other words, after the 2018 amendments, physicians were no longer required to inform the board of the existence of any criminal record sealed under § 100C on their license applications.

c.  Board of registration in medicine.  General Laws c. 112, § 5, mandates the board to "promote the public health, welfare, and safety" and "adopt rules and regulations governing the practice of medicine," including licensing medical professionals and any subsequent professional discipline.  See

G. L. c. 13, § 10; 243 Code Mass. Regs. §§ 1.00 (2012), 2.00.

See also Kvitka v. Board of Registration in Med., 407 Mass. 140,

143, cert. denied, 498 U.S. 823 (1990).  As such, the board has

the statutory authority to investigate complaints "relating to

the proper practice of medicine" and, upon a final

determination, to discipline physicians.  G. L. c. 112, § 5.

See 243 Code Mass. Regs. §§ 1.03, 1.05.  As part of its

disciplinary authority, the board must create physician

profiles, available to the public, which include in relevant

part "a description of any final board disciplinary actions."

G. L. c. 112, § 5.

    Discussion.[10,11]  1.  Board's use of records sealed under

§ 100C in its disciplinary proceedings.  As an initial matter,

---

[10] Although Doe submitted his license renewal application and the court sealed Doe's criminal record prior to the 2018 amendments, see St. 2018, c. 69, §§ 186-194, we decide this case under the current law because the 2018 amendments did not alter the law in any manner that would affect our conclusion. Moreover, "a declaration applying the current law is appropriate because" the board has not yet determined whether to discipline Doe, nor made his now-sealed criminal record publicly available; thus, any such decision will would be governed by the law as it exists under the 2018 amendments.  Boston Globe, 484 Mass. at 287-288.

[11] We first conclude we have the authority to review Doe's claims pursuant to our authority under G. L. c. 231A, § 1, and G. L. c. 214, § 1, as Doe asserted in his first amended emergency petition for relief.  The board does not contest our authority pursuant to those jurisdictional statutes.  We need not decide, therefore, whether we have authority to review this case under G. L. c. 249, § 4, as Doe initially argued.

we conclude that the board is not entitled to access records

sealed under § 100C.[12]  Nevertheless, the facts of this case

_____

In addition, Doe urges us to determine whether his criminal conduct provides a sufficient basis for discipline.  However, the board has not yet determined whether it will discipline Doe; thus, the issue is not before us.  While we recognize that the board's draft consent order indicates that such discipline is a distinct possibility, we will not preemptively deprive the board of its statutory authority to determine under what circumstances discipline is warranted.  See G. L. c. 112, § 5; Langan v. Board of Registration in Med., 477 Mass. 1023, 1025 (2017), quoting Sugarman v. Board of Registration in Med., 422 Mass. 338, 342 (1996) ("board has broad authority to regulate the conduct of the medical profession").  We, therefore, only consider whether the board is permitted to proceed in its disciplinary proceedings.

[12] The board argues that, pursuant to a certification issued in 2002 designating it as a criminal justice agency (2002 certification), it is entitled to access and to use sealed criminal records.  See G. L. c. 276, § 100D.  We disagree for several reasons.  First, under the CORI act, as amended by the 2010 amendments, it is clear that the board is a governmental licensing agency, which is not entitled to access sealed records, including those sealed under § 100C.  See G. L. c. 6, § 172 (a) (3) (iv); 803 Code Mass. Regs. § 2.05(4); Currier v. National Bd. of Med. Examiners, 462 Mass. 1, 4 (2012) (board is "Commonwealth's licensing agency for physicians").  See also G. L. c. 276, § 100C (prohibiting disclosure of existence of records sealed to any entity other than law enforcement agency or court).  The principal function of the board's disciplinary unit is to investigate complaints and to prosecute disciplinary actions against its licensees; the board is not permitted to impose criminal penalties.  See G. L. c. 112, § 5; 243 Code Mass. Regs. §§ 1.01(2), 1.05(2).  Cf. G. L. c. 6, § 167 (defining criminal justice agencies, in relevant part, as agencies whose principal function relates to crime prevention, or apprehension or prosecution of criminal offenders).

Second, it would be illogical for the Legislature to permit applicants to refrain from disclosing the existence of sealed criminal records on their medical license applications, per the 2018 amendments, while simultaneously permitting the board to access those same sealed records, without explicit statutory

demonstrate that there may be situations in which the board
obtains an unsealed criminal record, which is then sealed during
the pendency of the board's disciplinary investigation, and
which the board may wish to use as a basis for its final
disciplinary determination.[13]

    2.  <u>Analysis of the sealing statutes</u>.  Each of the three
sealing statutes delineate the ways in which entities are
prohibited from using the records sealed under it.  Both §§ 100A

---

authority to do so.  See G. L. c. 276, § 100C, as amended by
St. 2018, c. 69, §§ 193, 194.  Cf. G. L. c. 6, §§ 172 (a) (9),
(13), 172B, 172F (authorizing specific noncriminal justice
agencies access to sealed records).

Finally, even if the 2002 certification remained in effect,
it does not explicitly provide the board with access to sealed
records, as statutorily required at the time.  See G. L. c. 6,
§ 172 (2001) (requiring criminal history systems board both to
certify agency as criminal justice agency and to specify "the
extent of [that agency's] access").  Rather, the 2002
certification granted the board's disciplinary division access
to criminal offender record information only "for any purpose
consistent with approved criminal justice duties and
responsibilities, including accessing police reports on
physicians and acupuncturists under investigation by your
agency."

[13] Although Doe sent his criminal record to the board, there
are other avenues through which the board may come to possess
such a record under § 100C.  For example, under G. L. c. 221,
§ 26, in any case in which "a physician pleads nolo contendere
to charges or where sufficient facts of guilt were found and the
matter was continued without a finding," the clerk of the court
is required to inform the board within one week of such
dispositions, "together with a copy of the court proceedings in
the case."

and 100B provide, in relevant part, the nearly identical

language:

> "Such sealed records shall not operate to disqualify a
> person in any examination, appointment or application for
> public service in the service of the commonwealth or of any
> political subdivision thereof; nor shall such sealed
> records be admissible in evidence or used in any way in any
> court proceedings or hearings before any boards or
> commissions, except in imposing sentence in subsequent
> criminal proceedings" (emphasis added).

Although § 100C, like §§ 100A and 100B, prohibits its sealed

records from disqualifying an individual from public service,

§ 100C omits the language in §§ 100A and 100B that prohibits use

of sealed records in court proceedings or hearings before boards

or commissions.  See G. L. c. 276, § 100C.

"Courts must follow the plain language of a statute when it

is unambiguous and when its application 'would not lead to an

"absurd result," or contravene the Legislature's clear

intent.'"  Commonwealth v. Kelly, 470 Mass. 682, 689 (2015),

quoting Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79,

82 (1999) (Cargill).  "[W]e do not 'read into [a] statute a

provision which the Legislature did not see fit to put there,

whether the omission came from inadvertence or of set

purpose.'"  Fernandes v. Attleboro Hous. Auth., 470 Mass. 117,

129 (2014), quoting General Elec. Co. v. Department of Envtl.

Protection, 429 Mass. 798, 803 (1999).  "The omission of

particular language from a statute is deemed deliberate where

the Legislature included such omitted language in related or similar statutes." Fernandes, supra.

The omission of the language prohibiting the board from using records sealed under § 100C in its board proceedings makes clear that the board may do so. See G. L. c. 276, §§ 100A, 100B, 100C. Had the Legislature intended to include such a prohibition in § 100C, it "demonstrated that it knows how to do so." Stearns v. Metropolitan Life Ins. Co., 481 Mass. 529, 536 (2019). The Legislature enacted § 100C after it enacted both §§ 100A and 100B. See St. 1971, c. 686; St. 1972, c. 404; St. 1973, c. 322. The Legislature amended § 100C four times since it was originally enacted in 1973, including most recently in 2018. The Legislature did not, however, add to § 100C the statutory language that had been included in §§ 100A and 100B since its enactment prohibiting the use of sealed records in board proceedings. See G. L. c. 276, § 100A, as inserted by St. 1971, c 686; G. L. c. 276, § 100C, as amended by St. 1983, c. 312; St. 1984, c. 123; St. 2010, c. 256, §§ 131, 132; St. 2018, c. 69, §§ 193, 194. It is not our place to amend a statute's clear language to add language the Legislature chose to omit. See Fernandes, 470 Mass. at 129; Cargill, 429 Mass. at

82. Therefore, we conclude that the board may use a record sealed under § 100C in its disciplinary proceedings.[14]

3. Board's public disclosure of records sealed under § 100C.[15, 16] We next determine whether, upon a final

---

[14] Doe argues that any board disciplinary action based on his record sealed under § 100C would violate his equal protection rights because, pursuant to the 2018 amendments, the Legislature no longer requires professional license applicants to disclose the existence of any such records on their license applications. Thus, Doe argues, the 2018 amendments created two classes of physicians with records sealed under § 100C: (1) those who submitted their medical license applications prior to the 2018 amendments, who were required to disclose such sealed records; and (2) those who submit their medical license applications after the 2018 amendments, who are not required to do so. This argument is unavailing. Even if the 2018 amendments impermissibly created two classes of physicians, Doe is not a member of the disadvantaged group; thus, he is not entitled to relief. When Doe submitted his application to renew his medical license, in which he properly disclosed his criminal charge, he had not yet petitioned the court to seal his record. Therefore, when he submitted his application, Doe did not even possess a record sealed under § 100C.

[15] Although we conclude that the board is not a criminal justice agency, we note that to the extent it argued as much, its designation as a criminal justice agency would preclude it from publicly disclosing any criminal offender record information it received in its capacity as such, including records sealed under § 100C. Indeed, any disclosure of criminal offender record information, other than in accordance with the CORI act, subjects the offending entity to civil and criminal penalties, as expressly stated by statute and by the 2002 certification. See G. L. c. 6, §§ 177, 178.

[16] We recognize that this case comes to us before the board has decided whether to discipline Doe; thus, whether the board may make Doe's record sealed under § 100C publicly available is not yet ripe. However, in the event the board decides to discipline Doe based on his sealed criminal record, Doe would undoubtedly appeal that decision. Thus, in the interest of

disciplinary decision, the board is statutorily permitted to disclose the contents of a record sealed under § 100C as the basis for such decision.  To do so, we must harmonize the board's statutory obligation to make publicly available physician disciplinary information under G. L. c. 112, § 5, with the confidentiality requirements under G. L. c. 276, § 100C. Looking at the plain language of both statutes, as well as their legislative histories, and that of the CORI act, see G. L. c. 6, §§ 167-178, we conclude that while the board is permitted to disclose evidence it obtained independent of a record sealed under § 100C, the board may not publicly disclose the contents of such a sealed record.[17]

In 1996, the Legislature enacted "An Act providing for increased public access to data concerning physicians" (physician profile act), St. 1996, c. 307, in an effort to increase public access to physician information, thereby enabling people to "choose their own doctors."  Donohue, Developing Issues Under the Massachusetts "Physician Profile"

_____

judicial efficacy, we exercise our discretion and address the issue now.

[17] As the parties agree, records sealed under § 100C are statutorily exempt from disclosure pursuant to the public records law.  See G. L. c. 4, § 7, Twenty-sixth (a) and (c); Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 383 (2003) (CORI act operates as exception to "public records" definition).

Act, 23 Am. J.L. and Med. 115, 115-116 (1997). The physician profile act amended G. L. c. 112, § 5, to require the board to create physician profiles, available to the public, which include, in relevant part, "a description of any final board disciplinary actions." See St. 1996, c. 307, § 5. Although neither the statute nor the accompanying regulations require any level of specificity, the board asserts that such public disclosure is important to its "statutory mission of ensuring that only qualified competent physicians of good moral character are licensed to practice."

The sealing statutes, on the other hand, including § 100C, prohibit any public access to such sealed records and prohibit the commissioner of probation from disclosing the existence thereof, except in response to inquiries from statutorily permissible entities. See G. L. c. 276, §§ 100A-100C; Attorney Gen., 484 Mass. at 270. See also Commonwealth v. Moe, 463 Mass. 370, 373 n.8 (2012), cert. denied 568 U.S. 1231 (2013), quoting Commonwealth v. Boe, 456 Mass. 337, 338 n.2 (2010) (records sealed under § 100C "become unavailable to the public"; Police Comm'r of Boston v. Municipal Court of the Dorchester Dist., 374 Mass. 640, 648 (1978) (sealing orders require courts to "segregate [the sealed] records from the generality of records and to ensure their confidentiality to the extent specified in the controlling statute"). Section 100C "is

intended to enable such individuals to overcome the inherent collateral consequences of a criminal record and achieve meaningful employment opportunities." Pon, 469 Mass. at 297. See Rzeznik v. Chief of Police of Southampton, 374 Mass. 475, 479 (1978) (purpose of sealing statutes to shield "fact of a prior conviction" from public view). Thus, permitting the board to make publicly available the existence of a record sealed under § 100C would be inconsistent with the sealing statute's clear purpose.[18]

The CORI act's plain language and legislative history further support this conclusion. First and foremost, the CORI act explicitly prohibits public dissemination of criminal offender record information,[19] including sealed records. See

---

[18] Moreover, criminal records are sealed pursuant to § 100C only upon a judge's determination that the former criminal defendant sufficiently demonstrated that his privacy interest outweighed the public's interest in access to his criminal record. See Pon, 469 Mass. at 314-315. The record here demonstrates that there was evidence of Doe's profession before the sealing judge. We see no reason to permit the board to make publicly available information that a judge has already determined the public does not require. See id. at 301 (§ 100C permits sealing of records "whose availability [do] not serve criminal justice purposes").

[19] As stated, this prohibition only applies to criminal offender record information that is "compiled by a Massachusetts criminal justice agency." G. L. c. 6, § 167. See generally Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 266 (2020) (CORI act permits general public to obtain complete criminal history by going "to the clerk's office in every court house, search[ing] for every case under the individual's name, and review[ing] the court file").

St. 2010, c. 256, §§ 128-132; G. L. c. 6, §§ 177, 178. The legislative history for both the 2010 and 2018 amendments, which came after the Legislature enacted the physician profile act, also demonstrates the Legislature's intent to limit access to sealed criminal records and to reduce barriers for former criminal defendants with such records.

Moreover, we already have concluded that the board is not permitted to access sealed records, as it is neither a criminal justice agency nor a separately statutorily entitled entity. See G. L. c. 6, §§ 172 (a) (1), 177, 178; 803 Code Mass. Regs. § 2.05(2) (2020). Accordingly, it would defy logic to prohibit entities who are, in fact, entitled to access sealed criminal records from disseminating them, while also permitting the board, which is not entitled to access such sealed records, to make those records publicly available.

Our public disclosure prohibition, however, is confined to the actual record sealed under § 100C. It does not extend to independent evidence regarding or the conduct underlying Doe's criminal case, which it obtains separate and distinct from Doe's sealed record. See Moe, 463 Mass. at 373 n.8, quoting Boe, 456 Mass. at 338 n.2 (records sealed under § 100C "do not disappear; they continue to exist but become unavailable to the public"). See generally Boston Globe, 484 Mass. at 290 ("the goal of the CORI act is to limit the dissemination of someone's State-

compiled CORI report only to authorized recipients"). Such

independent evidence in this case includes Doe's self-report and

the statements Doe made during an interview with the board.[20]

We do note, however, that because nothing in the statute

requires the board to publish the basis for its final

disciplinary decision, see G. L. c. 112, § 5, the board should

limit its description to that which is necessary to fulfill its

mission. Indeed, the board's executive director attested to the

fact that the board has discretion regarding the nature and

specificity of the information it discloses to the public.

Conclusion. In sum, § 100C does not prohibit the board

from using a record sealed under that section in its

disciplinary proceedings. Section 100C does prohibit the board

from publicly disclosing any information gleaned directly from a

record sealed under § 100C, but § 100C does not prohibit the

---

[20] We recognize that this case presents somewhat unique circumstances in that Doe self-reported his criminal conduct prior to petitioning the court to seal his record. There may be other situations wherein the board learns of a physician's criminal conduct only after a court seals his or her criminal record. The timing, however, does not affect the board's ability to publicly disclose that physician's criminal conduct underlying his or her criminal record as the basis for a final disciplinary decision, so long as the board possessed relevant evidence separate and distinct from the record sealed under § 100C.

Moreover, we need not, in a factual vacuum, define the boundaries of what type of independent evidence the board would be permitted to make publicly available.

board from publicly disclosing any independent evidence regarding or the conduct underlying such a sealed record, which it obtains separate and distinct from the record.  This case is hereby remanded to the single justice with directions to issue an order consistent with this opinion.

So ordered.
