NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-1612                                    Appeals Court

J.C. vs. J.H.[1]


No. 15-P-1612.

Essex.      November 14, 2016. - September 14, 2017.

Present: Sullivan, Maldonado, & Neyman, JJ.


Civil Harassment. Harassment Prevention. Protective Order. Statute, Construction. Evidence, Intent, Presumptions and burden of proof. Practice, Civil, Burden of proof, Presumptions and burden of proof. Firearms.



Complaint for protection from harassment filed in the Lynn Division of the District Court Department on October 14, 2014.

A hearing to extend the harassment prevention order was had before Albert S. Conlon, J.


J.H., pro se.
Christine I. Wetzel for the plaintiff.


SULLIVAN, J. The defendant, J.H., appeals from a civil harassment prevention order issued pursuant to G. L. c. 258E.[2]

---

[1] We identify the parties by their initials in order to protect the identity of the plaintiff, in accordance with 18 U.S.C. § 2265(d)(3) (2012).

He contends that his former girl friend, the plaintiff, J.C., did not prove three or more acts of harassment as defined by G. L. c. 258E, § 1.  He further contends that the judge was without authority to order the surrender of his firearms.  For the reasons that follow, we vacate so much of the order as required the defendant to surrender his firearms.

Background.  We summarize the facts consistent with the judge's findings and rulings based on the affidavits filed and the testimony given at the hearing on the extension of the harassment prevention order.  The defendant initiated a relationship with the plaintiff in August of 2010 after meeting her at an Alcoholics Anonymous (AA) meeting.  The plaintiff ended their relationship in April of 2013.  After the relationship ended, the defendant made the plaintiff "very uncomfortable."  The plaintiff changed her activities to avoid him.  She did so because he was "pushy" and "suggested [they] get together for sex," even though she said no and repeatedly stated the relationship was over.  She attended a different AA meeting and switched to a different yoga studio than the one she had frequented when she was with the defendant.  The defendant

---

[2] The defendant appeals from the extension of the order that entered on the docket on November 7, 2014.  Notwithstanding the expiration of that order (and an extension entered on November 6, 2015), the defendant's appeal is not moot.  See Seney v. Morhy, 467 Mass. 58, 62 (2014).

continued to contact the plaintiff.  He sent her text messages, and she responded that she wanted to be left alone.

In July of 2013, the plaintiff received a series of text messages from the defendant.[3]  In the first message, the defendant texted, "You should be scared.  I know where you practice yoga.  See you at yoga, bitch!"  The plaintiff asked him not to contact her, and sought the assistance of the police, who told the defendant to cease all contact with the plaintiff.  Undeterred, the defendant continued to contact her and appeared at the plaintiff's yoga class in November or December of 2013.  The defendant looked at the plaintiff "angrily."  The plaintiff was fearful that he would follow her home, and she left the class early to avoid him.

Other text messages set a similar tone and provide further context.  In a second text message sent in July, 2013, the defendant texted the plaintiff, "You don't get it.  You have much more to lose in this than I do.  If you're so stupid to tell anyone in AA about us, you'll be fucked."  He then texted, "If you tell [your boy friend] about us, I'll send him naked pictures of you that'll prove you're a slut.  I'm keeping the pictures for blackmail purposes."  The defendant then sent numerous text messages to the plaintiff's boy friend.  A third

---

[3] It is unclear from the record whether these messages were all sent on the same day or on different days.

text message the defendant sent to the plaintiff during the month of July, 2013, stated, "And, if you tell [your boy friend] about the affair, I'll tell him how crazy and fucked up you are. I will ruin you.  Don't cross me.  This will end badly for you. You will pay the consequences."[4]

As noted above, the plaintiff telephoned her local police department and, while no report was filed, the police telephoned the defendant and told him not to contact the plaintiff.  The defendant continued to contact the plaintiff, who told him to leave her alone.

In addition to following the plaintiff to the yoga studio, the defendant also appeared at a Starbucks in December of 2013, where the plaintiff was seated with a friend.  "He was very red in the face and made extremely intimidating facial expressions towards [her]."  The plaintiff immediately left the Starbucks. The defendant continued to text the plaintiff after this incident, telling her that she should apologize for going to the police.

On January 1, 2014, the plaintiff filed a police report with the local police.  Once again, a police officer telephoned the defendant and told him not to contact the plaintiff.  The defendant continued to contact the plaintiff through electronic

---

[4] In another text message, the defendant referred to her as a "whore."

mail messages (e-mail), text messages, and letters. In May of 2014, the plaintiff went again to the police to report that the defendant continued to contact her and that the defendant had approached the plaintiff's boy friend and asked to speak to him. The police advised the plaintiff of her right to seek a harassment prevention order. The defendant continued to try to contact the plaintiff through a friend. He sent the plaintiff a letter in April of 2014 in which he stated, "I will admit to my jealousy." He promised not to contact her again, and asked that she not go to the police.

On July 30, 2014, the defendant appeared at the plaintiff's workplace, a private home where she was caring for children. He tried to talk to her, and blocked the driveway with his truck. The plaintiff "immediately took the kids inside their house," afraid that he would try to engage her. After that incident, the plaintiff received letters, text messages, and a flower delivery from the defendant, all in an effort to rekindle the relationship.[5] At this juncture the relationship had been over for fifteen months, and both the plaintiff and the local police department had made numerous unsuccessful efforts to dissuade the defendant from contacting and following her.

---

[5] At the hearing on the extension of the order, the defendant admitted that both the plaintiff and the police asked him to stop contacting the plaintiff and that he did not do so.

On October 14, 2014, the plaintiff filed a complaint for an ex parte harassment prevention order. The ex parte order issued, and the order was extended for one year at a hearing held on November 7, 2014, at which the judge found that the plaintiff had satisfied her burden in light of the "overwhelming number" of contacts, "particularly in the face of [the defendant] being told by the police that [he] just shouldn't be going there." The judge also specifically noted the fact that the defendant had followed the plaintiff to the yoga studio and Starbucks.

Discussion. 1. The order. When reviewing a harassment prevention order pursuant to G. L. c. 258E, "we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant committed '[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property.'" A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting from G. L. c. 258E, § 1, inserted by St. 2010, c. 23. "The plaintiff bears the burden of proving that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as being characterized by cruelty, hostility or revenge, and that each act was intended by the defendant to place the plaintiff in

fear of physical harm or fear of physical damage to property." A.T. v. C.R., supra (quotation omitted). See G. L. c. 258E, § 1; O'Brien v. Borowski, 461 Mass. 415, 420 (2012); Seney v. Morhy, 467 Mass. 58, 60 (2014); Van Liew v. Stansfield, 474 Mass. 31, 36-38 (2016); V.J. v. N.J., 91 Mass. App. Ct. 22, 25 (2017).

The record reflects an abundance of acts of harassment that meet the statutory criteria. Because there are multiple acts, many of which could support the extension of the order, we group the conduct into three categories for ease of our discussion. For the purpose of our analysis, we consider each of the following as an act within the meaning of the statute: (1) text messages telling the plaintiff that she "should be scared," calling her a "bitch," and telling her he knew how to find her at yoga, followed by his appearance at the yoga studio;[6] (2) text messages telling the plaintiff that she would be "fucked" and/or blackmailed, referring to her as a "slut" and a "whore," telling the plaintiff not to "cross [him]," that "[t]his will end badly for [her]," and that she would "pay the consequences," followed by confronting her at Starbucks; and (3) following her to her place of work, which she was not free to leave, after being

---

[6] Here, for example, the text message from the defendant telling the plaintiff that she should be scared because he knew where she goes to yoga, and appearing at the yoga studio (in light of the text), constitute separate acts, but we analyze them in tandem.

repeatedly told to leave her alone, and after promising to leave her alone.

The record supports the judge's conclusion that the plaintiff was scared and intimidated by these acts and that the defendant maliciously intended to cause and, in fact, caused intimidation and a fear of physical harm. The plaintiff explicitly stated in her affidavit that she was fearful, and the judge credited her statement.[7] Fear is judged by a subjective, not an objective, standard under the statute. See A.T. v. C.R., 88 Mass. App. Ct. at 537.[8] The judge considered the surrounding circumstances in crediting her affidavit. The judge also could consider the defendant's persistence despite repeated admonitions to stop, as well as his disregard for the directives of law enforcement, as independent bases to find that the plaintiff was actually intimidated and feared for her physical safety.

With respect to the defendant's subjective intent, his angry texts and "repeated and escalating harassment of the plaintiff . . . would reasonably support an inference that he intended to cause the plaintiff fear and intimidation." Id. at

---

[7] The judge was permitted to credit the plaintiff's affidavit and further corroboration was not required. See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 148 & n.10 (2006).

[8] "[T]he question is only whether [the plaintiff] in fact was placed in fear, not whether the fear was reasonable." Gassman v. Reason, 90 Mass. App. Ct. 1, 9 (2016).

538.  The plaintiff told the defendant repeatedly to leave her alone, but he did not.  Admittedly jealous, he ignored the admonitions of the police.  The plaintiff went to considerable lengths to avoid seeing the defendant, but he followed her to a new yoga class, to a coffee shop, and even to the private home where she cared for small children.  This behavior was combined with name-calling ("bitch," "whore," and "slut"), see V.J. v. N.J., 91 Mass. App. Ct. at 26, threats to blackmail her, threats to "ruin" her, threats that this would "end badly" for her, and the very direct statement in his July, 2013, text message that she "should be scared."  The evidence is sufficient to support a finding with respect to each of the three acts that the defendant acted out of cruelty, hostility, or revenge, that the acts were directed at the plaintiff, and that the defendant intended that "each" act carried with it the "intent to cause fear, intimidation, abuse, or property damage."  Seney v. Morhy, 467 Mass. at 63 (emphasis supplied; quotation omitted).

Moreover, the conduct was sustained over a fifteen-month period, and should be viewed in that context.  "In the determination whether the three acts 'did in fact cause fear, intimidation, abuse or damage to property,' it is 'the entire course of harassment, rather than each individual act, that must cause fear or intimidation.'"  A.T. v. C.R., 88 Mass. App. Ct. at 535, quoting from O'Brien v. Borowski, 461 Mass. at 426 n.8.

By the time the defendant appeared at the private home where the plaintiff worked, he had repeatedly texted the plaintiff and had followed her twice. Knowing that she had twice left when he had followed her, he picked a location that she would be unable to leave, because of her obligations to the children. Viewing the three acts in the context of what had come before, "it was reasonable for the judge to infer the existence of the . . . defendant's malicious intent." V.J. v. N.J., 91 Mass. App. Ct. at 28.

For the same reasons, the text messages were not constitutionally protected speech, as the defendant contends, but "true threats." O'Brien v. Borowski, supra at 425. A "true threat" is a statement made with the purpose of communicating "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. at 423 (quotation omitted). A true threat need not "threaten imminent harm; sexually explicit or aggressive language 'directed at and received by an identified victim may be threatening, notwithstanding the lack of evidence that the threat will be immediately followed by actual violence or the use of physical force.'" Id. at 424, quoting from Commonwealth v. Chou, 433 Mass. 229, 235 (2001). Here the threats were explicit. The defendant's first threat, that the plaintiff "should be scared," was explicit. His conduct in showing up at

the yoga studio reinforced and magnified the potential danger posed by the initial text messages, and placed the subsequent sexualized text messages warning her that this would "end badly" for her in a particularized context. See A.T. v. C.R., supra; V.J. v. N.J., supra.

In these circumstances, the plaintiff was entitled to "protect[ion] . . . from the fear of violence and from the disruption that fear engenders, in addition to protect[ion] . . . from the possibility that threatened violence will occur." O'Brien, supra at 423, quoting from Virginia v. Black, 538 U.S. 343, 359-360 (2003).

2. Firearms. The order to surrender the firearms stands on a different footing. Unlike abuse protection orders under G. L. c. 209A, § 3B, G. L. c. 258E does not provide for the surrender of firearms upon the issuance of a harassment prevention order. See G. L. c. 258E, § 3(a).[9] We consider this

---

[9] Section 3(a) of c. 258E, inserted by St. 2010, c. 23, provides:

"A person suffering from harassment may file a complaint in the appropriate court requesting protection from such harassment. A person may petition the court under this chapter for an order that the defendant:

"(i) refrain from abusing or harassing the plaintiff, whether the defendant is an adult or minor;

"(ii) refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor;

difference between the statutes to be dispositive for the following reasons.

"In interpreting the meaning of a statute, we look first to the plain statutory language. Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent . . . and the courts enforce the statute according to its plain wording . . . so long as its application would not lead to an absurd result." Worcester v. College Hill Properties, LLC, 465 Mass. 134, 138 (2013) (quotation omitted). General Laws c. 258E, § 3(a), authorizes four separate forms of relief. The statute limits the relief permitted under an order to those four categories. Unlike G. L. c. 209A, c. 258E omits the all-important phrase "including, but not limited to" from the introductory sentence of § 3(a). Contrast G. L. c. 209A, § 3, as appearing in St. 1990, c. 403, § 3 ("A person suffering from abuse from an adult or minor family or household member may file a complaint in the court requesting protection from such abuse, including, but not limited to, the following orders . . .").

"(iii) remain away from the plaintiff's household or workplace, whether the defendant is an adult or minor; and

"(iv) pay the plaintiff monetary compensation for the losses suffered as a direct result of the harassment; provided, however, that compensatory damages shall include, but shall not be limited to, loss of earnings, out-of-pocket losses for injuries sustained or property damaged, cost of replacement of locks, medical expenses, cost for obtaining an unlisted phone number and reasonable attorney's fees."

Nor does G. L. c. 258E contain a separate section authorizing the suspension or surrender of a license to carry firearms, a firearms identification card, and the surrender of firearms themselves. Contrast G. L. c. 209A, § 3B. The Legislature took great care in G. L. c. 209A, § 3B, to mandate the surrender of firearms, a firearm license, or a firearm identification card in certain circumstances. The Legislature also provided procedural protections to those whose firearm license, firearm identification card, or firearms had been surrendered, and considered important questions of public safety by designating those to whom the firearm should be surrendered. The omission of a similar provision, with similar protections, from G. L. c. 258E constitutes a clear expression of legislative intent. "The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes." Fernandes v. Attleboro Hous. Authy., 470 Mass. 117, 129 (2014). See Thomas v. Department of State Police, 61 Mass. App. Ct. 747, 754 (2004). See also Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003), quoting from 2A Singer, Sutherland Statutory Construction § 46.06, at 194 (6th ed. rev. 2000) ("[W]here the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").

The plaintiff contends that an order compelling the surrender of firearms is permitted under G. L. c. 258E, § 3(g), which provides that "[a]n action commenced under this chapter shall not preclude any other civil or criminal remedies."  To the extent that this language creates an ambiguity in the statute, "we look to external sources, including the legislative history of the statute, its development, its progression through the Legislature, prior legislation on the same subject, and the history of the times."  Worcester v. College Hill Properties, LLC, 465 Mass. at 139, quoting from 81 Spooner Rd. LLC v. Brookline, 452 Mass. 109, 115 (2008).

The legislative history of G. L. c. 258E forecloses the relief the plaintiff seeks in a c. 258E proceeding.  Language nearly identical to G. L. c. 209A, § 3B, was included in one of the initial versions of the bill which led to c. 258E, "but this element was removed from later versions and from the bill ultimately enacted.  Compare 2009 Senate Doc. No. 1611, An Act relative to sexual assault and stalking restraining orders (filed Jan. 14, 2009), with 2009 Senate Doc. No. 2185, An Act to prevent harassment at § 1 (filed Oct. 26, 2009); 2009 Senate Doc. No. 2212, An Act relative to harassment prevention orders at § 1 (filed Nov. 17, 2009); and c. 258E, § 1."  O'Brien v. Borowski, 461 Mass. at 427-428.  "This provision was stricken by the Legislature amidst general concerns related to Second

Amendment rights, and more specific concerns that individuals could use the statute as a tool of revenge against law enforcement officials whose profession requires them to carry firearms."  Flynn-Poppey & Abhar, Chapter 258E Harassment Prevention Orders -- Balancing the Rights of Victims and Defendants, 94 Mass. L. Rev. 23, 26 (2011).[10]  We do not consider the language of G. L. c. 258E, § 3(g), to be so broad as to encompass a remedy that the Legislature expressly rejected.  See Fernandes v. Attleboro Hous. Authy., 470 Mass. at 129.  The intent of the Legislature is clear.

It is also important to note, however, that the scope of relief outlined in G. L. c. 258E, § 3(g), together with G. L. c. 258E, § 4, makes clear that the criminal enforcement provisions of c. 258E are not exclusive, and that pursuit of other criminal charges is permitted.  The language in § 3(g) also plainly permits an applicant for a harassment prevention order to pursue other civil claims.  Finally, because § 3(a) & (g) apply only to actions commenced "under this chapter," ibid., they do not curtail the discretion of an issuing authority to revoke a firearms license "for cause at the will of the authority issuing the same," Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 43 (1993), quoting from G. L.

_____

[10] General Laws c. 258E also departed from G. L. c. 209A in other respects as well.  See Flynn-Poppey & Abhar, supra at 26.

c. 140, § 131, as appearing in St. 1986, c. 481, § 2,[11] or to file a petition to revoke a firearm identification card, see G. L. c. 140, § 129B(1 1/2)(a).

Conclusion.  The portion of the order entered November 7, 2014,  requiring the defendant to surrender his firearms is vacated.  The order is otherwise affirmed.

So ordered.

---

[11] The record reflects that the defendant was told by the police that he could lose his license to carry if he persisted in contacting the plaintiff.