STEPHANIE JOSLYN & another,[1] individually and as administrators,[2] *vs.* ANTHONY C. CHANG & others.[3]

Suffolk. October 6, 2005. - November 21, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Repose, Statute of. Wrongful Death. Medical Malpractice. Minor,* Wrongful death. *Negligence,* Medical malpractice, Wrongful death, Statute of repose. *Practice, Civil,* Wrongful death, Claim barred by statute of repose.

This court concluded that G. L. c. 260, § 4, a statute of repose, is not subject either to equitable estoppel or tolling pursuant to G. L. c. 260, § 12 (relating to fraudulent concealment); thus, the statute of repose barred an action. for wrongful death brought against two doctors and a hospital more than seven years after the occurrence of the act that was the alleged cause of injury. [346-352]

CIVIL ACTION commenced in the Superior Court Department on February 20, 2002.

The case was heard by *Thomas E. Connolly,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Charlotte E. Glinka* for the plaintiffs.

*George E. Wakeman, Jr.,* for the defendants.

COWIN, J. On October 19, 1992, the heart and coronary artery of the plaintiffs' infant daughter were unexpectedly punctured during surgery by the defendant doctors Anthony C. Chang and David P. Nelson at the defendant hospital (Children's Hospital). The child suffered a significant loss of blood and died shortly thereafter. Approximately ten years later, in 2002, an action for malpractice was commenced pursuant to the wrongful death statute, G. L. c. 229. A judge in the Superior Court granted

---

[1]Warren Joslyn.

[2]Of the estate of Sentree Joslyn.

[3]Children's Hospital Corporation and David P. Nelson.

summary judgment in favor of the defendants on the ground that the suit was untimely filed under the applicable statute of repose. We granted the plaintiffs' application for direct appellate review.

In opposition to the defendants' motion, the plaintiffs presented evidence that their delay was induced by misleading assertions and omissions of the defendants. The plaintiffs argue that they should be relieved of application of the statute of repose in G. L. c. 260, § 4, because the defendants fraudulently concealed their cause of action. It is unnecessary to determine whether misrepresentations of any kind took place or whether they amounted to fraudulent concealment, because we conclude that the relief the plaintiffs seek is contrary to the purpose and absolute language of the statute of repose; thus, we affirm the grant of summary judgment.

*Background.* On a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Sentree Joslyn was born on July 3, 1991. At seven months of age, she was diagnosed with a rare, inherited metabolic disorder. The child soon began to suffer from problems with intake of nourishment, muscle weakness, and a general failure to thrive.

In October, 1992, Sentree was admitted to Children's Hospital. Tests showed that her heart had become enlarged and that fluid had built up around it. Doctors believed the fluid was impairing the heart's ability to pump blood, and advised the plaintiffs that surgery could remove the fluid. The plaintiffs understood that Chang would perform the operation, although they did not sign a consent form. In fact, Nelson, a resident and fellow, initiated the procedure while Chang supervised. During the surgery, Sentree's heart and coronary artery were punctured. On discovery of the injury, Chang intervened but Sentree died approximately one hour and ten minutes after the procedure began. The injury was a significant contributing factor in the child's death.

Chang told the plaintiffs that their daughter had died because her heart was "too weak to withstand the procedure." He did not mention the puncture and significant blood loss. At the

time, no one from Children's Hospital told the plaintiffs that an event had occurred that caused a puncture or laceration of Sentree's heart, or that such an event resulted in an excessive loss of blood.

Sentree's death certificate, which the plaintiffs reviewed, was signed by Nelson and noted the manner of death as "natural." It attributed her death to the ailments for which she was being treated. The plaintiffs also authorized an autopsy because doctors wished to study the rare disorder from which Sentree suffered. The plaintiffs did not obtain the results of the autopsy or other records: hospital staff told them that records were not sent to patients because the materials would contain incomprehensible medical terms. The plaintiffs took no further action at that time.

Much later, in 2001, at the suggestion of a pediatrician who was caring for their other daughter, the plaintiffs finally requested Sentree's records from Children's Hospital. The records revealed the surgical complications that contributed to Sentree's death.[4]

The plaintiffs filed suit against Chang and Children's Hospital on February 20, 2002, later amending their complaint to include Nelson. A judge in the Superior Court granted summary judgment,[5] concluding that the applicable statute of repose had run on October 19, 1999, and that the filing of suit against the defendants two to three years later was untimely. The plaintiffs appealed.

*Discussion.* General Laws c. 260, § 4, provides in pertinent part that "in no event shall any . . . action" sounding in "contract or tort for malpractice, error or mistake against physicians, surgeons . . . hospitals and sanitoria" "be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action

---

[4]The plaintiffs were also advised that Sentree had been misdiagnosed and did not actually suffer from a metabolic disease. Although her diagnosis had been incorrect, the plaintiffs were told that Sentree "probably did have some disease." Aside from a bare reference in their second amended complaint, the misdiagnosis does not appear to form part of their claim.

[5]The judge treated a motion to dismiss filed by the defendants as a motion for summary judgment pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).

is based."[6] This language constitutes a statute of repose. *Nett* v. *Bellucci*, 437 Mass. 630, 635 (2002). "The effect of a statute of repose is to place an absolute time limit on the liability of those within its protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired." *McGuinness* v. *Cotter*, 412 Mass. 617, 622 (1992). Statutes of repose are to be contrasted with statutes of limitation, which commence at the time a cause of action accrues, typically when damages are sustained or discovered. See *Franklin* v. *Albert*, 381 Mass. 611 (1980).

The plaintiffs advance two arguments for relief from operation of the statute. First, they assert that the defendants are equitably estopped from invoking the defense of the statute of repose because they fraudulently concealed the plaintiffs' cause of action. Second, the plaintiffs contend that the running of the statute of repose is tolled pursuant to G. L. c. 260, § 12, which provides that fraudulent concealment tolls the determination of "the time limited for commencement of the action." The resolution of both arguments is controlled by the language of § 4, the history of this statute of repose, and our previous cases.

The genesis of the statute of repose in § 4 appears traceable to our decision in *Franklin* v. *Albert, supra*, pertaining to the statute of limitations for medical malpractice matters. See *Harlfinger* v. *Martin*, 435 Mass. 38, 41-42 (2001). Prior to the *Franklin* case, a cause of action accrued for purposes of the statute of limitations "at the time of the act of malpractice, 'and not when the actual damage result[ed] or [was] ascertained.' " *Franklin* v. *Albert, supra* at 612, quoting *Pasquale* v. *Chandler*, 350 Mass. 450, 456 (1966). The rule was abrogated in the *Franklin* case and replaced by a more modern discovery rule, by which

---

[6]This is an action for wrongful death filed under G. L. c. 229. Section 2 of the chapter specifies that an action for medical malpractice brought pursuant thereto is to be commenced within the time specified in G. L. c. 260, § 4. A different provision, G. L. c. 231, § 60D, contains a statute of repose for medical malpractice actions brought by minors. To the extent the parties refer to either statute, each has the same effect on this case and the parties do not argue otherwise. See *Nett* v. *Bellucci*, 437 Mass. 630, 635 (2002). See also note 9, *infra*.

an action accrued only "when the plaintiff learn[ed], or reasonably should have learned, that he ha[d] been harmed by the defendant's conduct." *Id.* at 619.

In the *Franklin* decision, we noted that any concern that the new rule would "fan the medical malpractice crisis by resulting in more claims that [would] in turn contribute to higher insurance premiums and, finally, to curtailment of health care services," was "better addressed to the Legislature, which [was], of course, free to make a contrary reconciliation of the conflicting policies involved or *to place an outside limit on the time for bringing a malpractice action*" (emphasis added). *Id.* In this regard, we referred to the laws of several other States that had done precisely that. *Id.* at 619 n.12.

The first legislative proposals concerning addition of a statute of repose appeared in 1981 and were referred to committee for study. See 1981 Senate Doc. Nos. 1762, 2030; 1981 Senate J. 714. This recurred each year through the General Court's 1985 session. See, e.g., 1985 Senate Doc. Nos. 1068, 1766, 2293; 1985 Senate J. 524. Enactment appears to have been stymied during this period by unfavorable reports of committee, see, e.g., 1984 Senate J. 332, and of a special commission created in 1975 to address a "crisis . . . in Massachusetts medical professional liability insurance."[7] 1986 House Doc. No. 5355, at 5. The commission, in particular, reported in 1983 that "the decision in *Franklin* v. *Albert*[] has caused some anxiety about possible increases in malpractice actions resulting from . . . the 'discovery rule' . . . [but] [a]t present [the commission] possesses no information suggesting that such an increase has occurred or will occur." 1983 House Doc. No. 5980, at 17.

By 1986, however, the commission's recommendation had changed. Now, it reported that a crisis existed concerning "extraordinary premium increases" for medical malpractice insurance, see 1986 House Doc. No. 5355 at 20, and elaborated that, "[f]or reasons still unexplained," medical malpractice claims increased fifty per cent in the second half of 1981. *Id.* at 6.

---

[7]The original scope of the special commission's inquiry embraced an examination of tort reform. See St. 1975, c. 362, § 12. The scope was later expanded to include specifically consideration of a statute of repose for medical malpractice actions. See Res. 1982, c. 6.

Premiums soared 38.9 per cent in 1982. For the 1983 to 1984 period,[8] the joint underwriting association (JUA), an entity created by statute in 1975 to write medical malpractice insurance policies, recommended an astonishing 189.2 per cent increase. *Id.* at 7. See St. 1975, c. 362, § 6 (creating JUA). The special commission, as well as other interested groups, appeared to believe that the *Franklin* decision was at least a factor in fomenting this crisis. 1986 House Doc. No. 5355, at 6.

The statute of repose in § 4 was adopted in the wake of this report.[9] See St. 1986, c. 351, § 30. The relevant language was identical to the 1981 proposals, with two modifications. First, the term of the statute was different. Early proposals called for a three or four-year statute of repose. See, e.g., 1981 Senate Doc. Nos. 1762, 2030. Instead, the House initially approved a five-year period, 1986 House Doc. No. 5612, § 19, and the Senate endorsed a ten-year period, 1986 Senate Doc. No. 2030, § 30. The final seven-year period reflected a compromise. See 1986 House Doc. No. 6172, § 30. Second, the original 1981 proposal contained no exceptions while the version enacted in 1986 expressly excluded actions "based upon the leaving of a foreign object in the body." St. 1986, c. 351, § 30.

The context of the enactment of the provision is also instructive. The statute of repose was not passed in isolation, but as "part of a larger, long-term effort to curb the cost of medical malpractice insurance and keep such insurance available and affordable," *Harlfinger* v. *Martin, supra* at 43, thereby adjusting the economics of the practice and consumption of medical services in the Commonwealth. See 1987 House Doc. No. 5262, at 6-12. It was posited that the initiative would ensure the continued affordability and quality of medical care for the benefit of all citizens of the Commonwealth. For example, the act imposed additional reporting requirements for misconduct in

---

[8]At the time of the report, rates were being retroactively reset for the period pursuant to our decision in *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43 (1985), in which the court determined that the rate fixed previously had been "significantly lower than all the actuarial recommendations." *Id.* at 57.

[9]General Laws c. 231, § 60D, was revised at the same time to include a statute of repose containing identical language applying to medical malpractice actions brought by minors. See St. 1986, c. 351, § 23.

the medical community, see St. 1986, c. 351, §§ 7-9; authorized regulations requiring malpractice insurance for all physicians, § 12; increased the disciplinary authority of the board of registration in medicine, §§ 13-14; modified other judicial procedures and remedies, §§ 21-22, 24-27; and directed the JUA to offer incentives pertaining to physicians' risk management techniques and malpractice claims, §§ 35-36.

Statutory rules of construction also support our conclusion that the statute of repose is not subject to either equitable estoppel or tolling pursuant to G. L. c. 260, § 12 (relating to fraudulent concealment). At the time the statute of repose was enacted, we had already decided the case of *Tindol* v. *Boston Hous. Auth.*, 396 Mass. 515, 518-519 (1986), in which we interpreted G. L. c. 260, § 2B, a statute of repose for certain architectural and construction workers that contains language similar to that later added to § 4. In the *Tindol* case, we reaffirmed the sharp distinction between statutes of limitations and statutes of repose, holding that the latter were "of an entirely different legal genre," the effect of which was "to abolish the remedy and not merely to bar the action." *Id.* at 518, 519. We presume that "the Legislature knew preexisting law and the decisions of this court," *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950), and intended the new language to be interpreted in like manner.

In addition, the Legislature allowed only one exception to the statute of repose, that pertaining to actions arising from a foreign object left in the body. See G. L. c. 260, § 4. No exclusion or tolling provision expressly applying to the statute of repose was enacted for cases involving fraudulent concealment. "The fact that the Legislature specified one exception . . . strengthens the inference that no other exception was intended." *LaBranche* v. *A.J. Lane & Co.*, 404 Mass. 725, 729 (1989).

Enforcement of the statute of repose as a rigid prohibition of action is consistent with our cases, which are clear that statutes of repose are not subject to any form of equitable tolling, *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 631 n.19 (1997), except as specifically provided by the statute. In the case of *Tindol* v. *Boston Hous. Auth.*, *supra* at 517-518, we concluded that a tolling provision for minors contained in G. L.

c. 260, § 7, did not modify the similar repose provisions of § 2B. We also held that the defendants could not be added to an ongoing lawsuit after the term of the statute of repose expired. *Id.* at 519. Likewise, we held in *Sullivan* v. *Iantosca*, 409 Mass. 796, 798 & n.3 (1991), that the fraudulent concealment provisions of G. L. c. 260, § 12, did not toll § 2B where the alleged acts of fraudulent concealment were the same acts that gave rise to the underlying claim.

The object of a statute of repose, as stated by Justice Story, "is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses." *Spring* v. *Gray*, 22 F. Cas. 978, 984-985 (C.C.D. Me. 1830), aff'd, 31 U.S. (6 Pet.) 151 (1832). "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations . . . ." *Klein* v. *Catalano*, 386 Mass. 701, 709 (1982), quoting *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972) (interpreting G. L. c. 260, § 2B).

Identification of any specific, ascertainable endpoint is "in some manner arbitrary but the drawing of the line . . . is a task to be exercised at the discretion of the appropriate branch of government," the Legislature. *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433-434 (1977). We cannot introduce an equitable exception when the Legislature has fashioned an ironclad rule. In any event, the generous time allowed for suit under § 4 weighs strongly against implication of a rule of equitable tolling as a matter of fairness. See *Lantzy* v. *Centex Homes*, 31 Cal. 4th 363, 367 (2003).

As we have stated previously, we recognize that statutes of repose "may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim" but who does not suffer or discover the injury within the period permitted for initiation of suit. *Klein* v. *Catalano, supra* at 713. Nevertheless, we are not to interpret a statute based on such concerns. *Id.* The principle of judicial restraint embodied in art. 30 of the Massachusetts Declaration of Rights recognizes "the inability and

undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected Legislature." *Zayre Corp.* v. *Attorney Gen., supra* at 433 (challenge to Sunday closing laws).

"[T]he duty of the court [is] to adhere to the very terms of the statute, and not, upon imaginary equitable considerations, to escape from the positive declarations of the text. No exceptions ought to be made, unless they are found therein; and if there are any inconveniences or hardships growing out of such a construction, it is for the legislature, which is fully competent for that purpose, and not for the court, to apply the proper remedy." *Spring* v. *Gray, supra* at 985. The Legislature studied the economic realities of the delivery of health care services in the Commonwealth extensively, and the enactment of the statute of repose was part of its rational solution. See *Harlfinger* v. *Martin, supra* at 48-49. It is not for this court to revisit these policy considerations.

The plaintiffs refer us to cases from other jurisdictions in which fraudulent acts were found to have tolled other statutes of repose or given rise to equitable estoppel. In light of the differing language of the laws at issue, the differing postures of the cases themselves, and the compelling legislative history in this jurisdiction, we decline to follow their reasoning.

*Judgment affirmed.*