NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12544

JUNE STEARNS, coexecutrix,[1] & another[2] vs.  METROPOLITAN LIFE INSURANCE COMPANY & others.[3]


Suffolk.     December 4, 2018. - March 1, 2019.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Asbestos.  Repose, Statute of.  Negligence, Statute of repose. Practice, Civil, Claim barred by statute of repose.


Certification of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

_____

[1] Of the estate of Wayne Oliver.

[2] Clifford Oliver, coexecutor of the estate of Wayne Oliver.

[3] Foster Wheeler Energy Corporation; Aurora Pump Co.; Crane Co.; Ingersoll-Rand Company; Marotta Controls, Inc.; The Nash Engineering Company; Weir Valve & Controls USA, Inc., formerly known as Atwood & Morrill Co., Inc.; Viking Pump, Inc.; Warren Pumps, LLC; General Electric Company; IMO Industries, Inc., formerly known as Delaval Steam Turbine Company; NSTAR Electric, formerly known as Boston Edison Company; New England Insulation Company; O'Connor Constructors, Inc., formerly known as Thomas O'Connor Company, Inc.; Flowserve Corporation, formerly known as Byron Jackson Company; and Velan Valve Corp.

General Electric Company (GE) is the only defendant involved with the questions certified to this court.

John A. Heller, of Illinois (Catherine A. Mohan & Benjamin M. Greene also present) for General Electric Company.

Michael J. McCann (Michael C. Shepard, Lisa M. Conserve, & Erika A. O'Donnell also present) for the plaintiffs.

John R. Felice & Brad W. Graham for Massachusetts Defense Lawyers Association, amicus curiae, were present but did not argue.

The following submitted briefs for amici curiae:

Lawrence G. Cetrulo, Stephen T. Armato, Whitney K. Barrows, Elizabeth S. Dillon, Lauren K. Camire, & Brian D. Fishman for Massachusetts Asbestos Litigation Defendants' Liaison Counsel.

Thomas R. Murphy, Kevin J. Powers, & John G. Mateus for Massachusetts Academy of Trial Attorneys.

CYPHER, J.  In this case we are called on to answer a certified question from the United States District Court for the District of Massachusetts concerning whether the six-year statute of repose set forth in G. L. c. 260, § 2B (§ 2B), operates to bar tort claims arising from diseases with extended latency periods, such as those associated with asbestos exposure, where the defendants had knowing control of the injurious instrumentality at the time of exposure.[4]  We answer the question in the affirmative.  Consistent with our precedent, we conclude that § 2B completely eliminates all tort claims arising out of any deficiency or neglect in the design, planning, construction, or general administration of an

---

[4] We acknowledge the amicus curiae briefs submitted by the Massachusetts Defense Lawyers Association and Coalition for Litigation Justice, Inc.; Massachusetts Asbestos Litigation Defendants' Liaison Counsel and Coalition for Litigation Justice, Inc.; and Massachusetts Academy of Trial Attorneys.

improvement to real property after the established time period has run, even if the cause of action arises from a disease with an extended latency period and even if a defendant had knowing control of the instrumentality of injury at the time of exposure. In so doing, we recognize that, considering the latency period for asbestos-related illnesses, this will have the regrettable effect of barring all or nearly all tort claims arising from negligence in the use or handling of asbestos in construction-related suits. Nonetheless, the appropriate recourse is in the Legislature, not this court.

Background. Because our task is limited to responding to the certified question, we do not delve deeply into the factual complexities of this case.[5] The underlying action concerns the death of Wayne Oliver, who died in 2016 of mesothelioma after exposure to asbestos during the construction of two nuclear power plants in the 1970s. Relevant to the issue at hand, defendant General Electric Company (GE) designed, manufactured, and sold steam turbine generators for installation at each of the plants and supervised the installations. GE's installation specifications called for the use of asbestos-containing insulation materials. Oliver, who worked as a pipe inspector for a nonparty, was present while the insulation was cut, mixed,

---

[5] We take our facts as the Federal District Court judge found them.

and applied to certain piping systems and equipment in the turbine halls of both plants, exposing him to the toxic asbestos particles within.

Oliver came into contact with the tainted insulation between 1971 and 1978,[6] received his malignant mesothelioma diagnosis in April 2015, and commenced the underlying action in the Superior Court in August 2015.  He alleged, among other things, that GE had negligently exposed him to asbestos during the construction of the two power plants and caused him to contract mesothelioma.  Thereafter, the case was removed to the Federal District Court and, when Oliver passed away in July 2016, that court allowed the plaintiffs, as coexecutors of Oliver's estate, to submit an amended complaint and continue the litigation.

GE moved for summary judgment on the ground that the plaintiffs' claims against it were barred by § 2B, which sets a firm six-year time limit for tort actions arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property.  The plaintiffs disputed that § 2B was intended to apply to cases involving diseases with extended latency periods because it

---

[6] The plants opened commercial operations in 1972 and 1975, respectively.

otherwise would have the effect of extinguishing meritorious claims before they even come into existence.

The judge found that GE's turbine generators, including their insulation materials, were "indisputably" improvements to real property under the statute.  Notwithstanding this finding, she denied GE's motion as to Oliver's claims arising from the alleged asbestos exposure because it was "not at all clear" that the statute was designed to bar a category of claims "known uniformly to have a latency period of at least twenty years," particularly where "GE had control of the site at the time of Oliver's asbestos exposure, conducted regular on-site maintenance and inspections for at least two decades after construction was complete, and continues . . . to perform [routine] refueling outages", removing it from the category of defendants customarily protected by the statute.  GE subsequently moved for the judge either to reconsider her decision or certify the ruling for an interlocutory appeal to the United States Court of Appeals.  The plaintiffs opposed interlocutory appeal but, in the event of any such appeal, moved instead for certification to this court pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).  The judge denied GE's motion and certified to us the following question:

> "whether or not the Massachusetts statute of repose, [G. L. c.] 260, § 2B, can be applied to bar personal injury claims arising from diseases with extended latency periods, such

as those associated with asbestos exposure, where defendants had knowing control of the instrumentality of injury at the time of exposure."

We conclude that the answer to the reported question is controlled by the language of § 2B, the history of this and related statutes of repose, and our previous cases.

Discussion. We interpret a statute according to the intent of the Legislature, which we ascertain from all its words, "construed by the ordinary and approved usage of the language" and "considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished" (citation omitted). Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006). See generally G. L. c. 4, § 6, Third. Where, as here, the language is clear and unambiguous, it is conclusive as to the Legislature's intent. Sharris v. Commonwealth, 480 Mass. 586, 594 (2018).

It is well established that a statute of repose "eliminates a cause of action at a specified time, regardless of whether an injury has occurred or a cause of action has accrued as of that date." Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 352 (2018). See Sisson v. Lhowe, 460 Mass. 705, 709 (2011) (statute of repose focuses on date defendant's negligent acts or omissions were alleged to have occurred regardless of whether cause of action has accrued or whether any injury has resulted

[quotations and citation omitted]); Joslyn v. Chang, 445 Mass. 344, 347 (2005) (same).  It places "an absolute time limit on the liability of those within its protection" and "abolish[es] a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired."  Bridgwood, supra at 353, quoting Nett v. Bellucci, 437 Mass. 630, 635 (2002).  See Black's Law Dictionary 1637 (10th ed. 2014) (defining statute of repose as "[a] statute barring any suit that is brought after a specified time since the defendant acted [such as by designing or manufacturing a product], even if this period ends before the plaintiff has suffered a resulting injury").  The effect is to "abolish the remedy . . . not merely to bar the action."  Tindol v. Boston Hous. Auth., 396 Mass. 515, 518 (1986).  See Bridgwood, supra at 352 (statutes of repose provide substantive right to be free from liability after given period of time has elapsed from defined event).

In stark contrast to statutes of limitation, "statutes of repose may not be 'tolled' for any reason" (emphasis added). Nett, 437 Mass. at 635.  See, e.g., Rudenauer v. Zafiropoulos, 445 Mass. 353, 358 (2005) (medical malpractice statute of repose not subject to tolling, even where medical treatment is ongoing); Joslyn, 445 Mass. at 350-351 (statute of repose not subject to any form of equitable estoppel or tolling, even in

instances of fraudulent concealment); Sullivan v. Iantosca, 409 Mass. 796, 798-799 (1991) (statute of repose bars action even if knowing and intentional wrongdoing is involved); Tindol, 396 Mass. at 517-518 (statute of repose is not tolled by minority or mental illness). Indeed, "[t]he only way to satisfy the absolute time limit of a statute of repose is to commence the action prior to the expiration of that time limit" (emphasis added; quotations and citation omitted). Nett, 437 Mass. at 635. See Sisson, 460 Mass. at 716. We previously concluded, and do so again, that § 2B is no exception to these rules. Bridgwood, 480 Mass. at 353 (§ 2B protects contractors from claims arising long after completion of work); Aldrich v. ADD Inc., 437 Mass. 213, 221 (2002), quoting Klein v. Catalano, 386 Mass. 701, 702 (1982) ("Simply put, after six years, [§ 2B] completely eliminates a cause of action against certain persons in the construction industry").

The statute provides in relevant part:

"Action[s] of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

We recently had occasion to discuss both the language of and the legislative purpose behind the enactment of § 2B in Bridgwood, 480 Mass. at 351-358. In that case, we reiterated that the Legislature's primary objective in enacting § 2B was to limit the liability of architects, engineers, contractors, and others involved in the design, planning, construction, or general administration of an improvement to real property in the wake of case law abolishing the long-standing rule that once an architect or builder had completed his work and it had been accepted by the owner, absent privity with the owner, liability was cut off as a matter of law. Id. at 353, discussing Klein, 386 Mass. at 708-709. The abolition of that rule exposed many participants in the construction industry "to possible liability throughout their professional lives and into retirement," liability that the Legislature sought to curtail with the enactment of § 2B. Klein, 386 Mass. at 708-709. "Otherwise, those engaged in the design and construction of real property may have to mount a defense when architectural plans may have been discarded, copies of building codes in force at the time of construction may no longer be in existence, persons individually involved in the construction project may be deceased or may not be located"[7] (quotations and citation omitted). Id. at 709-710.

---

[7] Suppliers and manufacturers are not included in the class of persons protected from suit under G. L. c. 260, § 2B (§ 2B).

See Joslyn, 445 Mass. at 351 ("The object of a statute of repose . . . is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses" [quotation and citation omitted]).

We have held that limiting the duration of liability in this way serves a legitimate public purpose, even though it may abolish a plaintiff's cause of action without providing any alternative remedy. Bridgwood, supra at 353. See Klein, 386 Mass. at 712 n.16 (Legislature may enact statute that abolishes common-law cause of action without providing substitute remedy if statute is rationally related to permissible legislative objective). And we have concluded that "[i]n establishing the six-year limit, the Legislature struck what it considered to be a reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those

---

McDonough v. Marr Scaffolding Co., 412 Mass. 636, 641 (1992). See Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 694 n.10, cert. denied, 484 U.S. 953 (1987) ("It is clear from the language of the statute, and our decisions, that § 2B does not apply to materialmen and suppliers. Any ambiguity that may arise in the application of § 2B arises only from the question whether a party acted as a materialman or supplier . . . ."). In addition, Massachusetts has not limited products liability actions with a statute of repose. Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 648 (1994).

involved in construction." Klein, supra at 710. See Aldrich, 437 Mass. at 221. The plaintiffs' case is no exception.

The plaintiffs contend that § 2B does not shield a defendant that was in control of the improvement to real property at the time of the incident giving rise to the cause of action, nor does it apply to diseases with extended latency periods, such as those associated with asbestos exposure. We do not agree.

The language of § 2B is unequivocal. It provides that "in no event shall [an action of tort for damages covered herein] be commenced more than six years" after the earlier of two specified dates: "(1) the opening of the improvement to use; or (2) the substantial completion of the improvement and the taking of possession . . . by the owner" (emphasis added). The apparent intent of the Legislature was to place an absolute time limit on the liability of those protected by the statute. Bridgwood, 480 Mass. at 352-353. Indeed, it "forbids us from considering the fact that a plaintiff did not discover or reasonably could not have discovered the harm before the six-year period of the statute of repose expired," or any other circumstances that might have tolled the running of a statute of limitations. Sullivan, 409 Mass. at 798. See id. at 798-799 (as § 2B is written, it makes no difference whether defendant caused deficiency or neglect "by gross negligence, wanton

conduct, or even knowing and intentional wrongdoing").  The plaintiffs are requesting that we imply exceptions to § 2B where there are none.  We decline to do so.  The "Legislature has fashioned an ironclad rule," Joslyn, 445 Mass. at 351, and we will not read into it any exception that the Legislature did not see fit to put there, whether by inadvertence or design. Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 129 (2014). See Tze-Kit Mui v. Massachusetts Port Auth., 478 Mass. 710, 712 (2018) ("ordinarily we will not add language to a statute where the Legislature itself has not done so"), citing Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 9 (1998) (court will not add language to statute that Legislature could have, but did not, include).  Accord District Att'y for the Plymouth Dist. v. Selectmen of Middleborough, 395 Mass. 629, 633 (1985), quoting 2A C. Sands, Sutherland Statutory Construction § 47.11 (4th ed. 1984) (exceptions to statutes "are not to be implied").  Accord Porter v. Nowak, 157 F.2d 824, 825 (1st Cir. 1946), quoting United States v. Goldenberg, 168 U.S. 95, 103 (1897) ("No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute").  "Had the Legislature intended to remove this shield and expose contractors to indefinite liability for claims

arising long after the completion of their work, it would have said so explicitly."  Bridgwood, 480 Mass. at 357-358.[8]

Our conclusion is bolstered by the fact that the Legislature has expressly provided for an exception in another, similar statute of repose.  See G. L. c. 260, § 4 (statute of repose applicable to medical malpractice actions excludes actions arising from foreign object left in body); Joslyn, 445 Mass. at 350 ("the Legislature allowed only one exception to the statute of repose, that pertaining to actions arising from a foreign object left in the body").  The fact that the

---

[8] The plaintiffs argue, relying on Klein v. Catalano, 386 Mass. 701, 717 (1982), that GE is not protected by § 2B because it was in "control" of the improvement to real property at the time Wayne Oliver was exposed to the asbestos-tainted insulation.  We are not persuaded.  In Klein, we noted that the Legislature could have reasonably concluded that it was appropriate to place different time limits on the liability of builders and other design professionals "from those placed on persons in possession or control as owner, tenant, or otherwise" because "[a]fter . . . acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement to immovable property by the owner, lessor or tenant," which could result in an injury that could not be prevented by the builder or design professional.  Id. at 715-716.  We noted also that the Legislature could have reasonably concluded that "[a] limit on liability may be necessary to encourage those professionals to experiment with new designs and materials."  Id. at 717.  We did not, and do not, suggest that the degree of control over the improvement at the time of the alleged negligence should weigh on the consideration of whether a builder or other design professional is covered by the statute.  Indeed, it would seem that in every case the defendant would have some degree of control over the improvement for its actions to give rise to a viable claim of deficiency or negligence.

Legislature saw fit to specify an exception to the statute of repose applicable to medical malpractice actions and did not similarly do so in the circumstances of this case strengthens the inference that no exceptions were intended here.  Joslyn, 445 Mass. at 350.  See Fernandes, 470 Mass. at 129 ("The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes").

Moreover, had the Legislature wanted to exempt claims arising from negligence involving asbestos from § 2B specifically, it has demonstrated that it knows how to do so. In G. L. c. 260, § 2D, the so-called asbestos revival statute, see Commonwealth v. Owens-Corning Fiberglas Corp., 38 Mass. App. Ct. 600, 603 (1995), the Legislature established special time periods during which the Commonwealth and its subdivisions could bring an action, otherwise time-barred by § 2B, to recover the cost of asbestos removal from public buildings.[9]  See Boston v. Keene Corp., 406 Mass. 301, 303 (1989) (Keene); Owens-Corning

---

[9] General laws c. 260, § 2D, provides:

"Any action brought by . . . the [C]ommonwealth or any other political subdivision thereof to recover any costs associated with asbestos related corrective actions . . . shall be commenced only within six years next after . . . the [C]ommonwealth or any other political subdivision thereof knew of the presence of and the hazard or damage caused by the presence of such asbestos or material containing asbestos within its buildings."

Fiberglas Corp., 38 Mass. App. Ct. at 603-604. The effect of the legislation was, among other things, to revive asbestos claims on which the statute of repose period set forth in § 2B had already run. Id. at 603. That the Legislature excepted the Commonwealth from the ambit of § 2B, if only in limited circumstances and for only a limited time, and did not similarly except private plaintiffs in those or any circumstances, reinforces our conclusion that the Legislature did not intend to establish an exception here. Moreover, we noted in Keene that in declining to provide a similar benefit to private plaintiffs, the Legislature "could well have concluded that the asbestos problem was most acute in public buildings, and thus decided to address that aspect of the crisis first." Keene, 406 Mass. at 309. If the Legislature sees fit to likewise afford relief to private plaintiffs, now or in the future, then it is the Legislature's exclusive prerogative to do so. Joslyn, 445 Mass. at 352 ("No exceptions ought to be made [to a statute of repose], unless they are found therein; and if there are any inconveniences or hardships growing out of such a construction, it is for the [L]egislature, which is fully competent for that purpose, and not for the court, to apply the proper remedy"). See Keene, supra, quoting Mobil Oil Corp. v. Attorney Gen., 361 Mass. 401, 417 (1972) ("When legislative authority is exerted within a proper area, it need not embrace every conceivable

problem within that field.  The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind").

"As we have stated previously, we recognize that statutes of repose 'may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim' but who does not suffer or discover the injury within the period permitted for initiation of suit."  Joslyn, 445 Mass. at 351, quoting Klein, 386 Mass. at 713.  Notwithstanding this harsh reality, we do not interpret statutes based on such concerns.  See Bridgwood, 480 Mass. at 353 ("Since deciding Klein, we have consistently enforced statutes of repose according to their plain terms, despite the hardship they may impose on plaintiffs"); Klein, supra ("In upholding [§ 2B], we realize that in some cases this statute may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim.  However, 'arguments as to hardship . . . are appropriate respecting the enactment of legislation.  They are not controlling in the interpretation of existing statutes.'" [citation omitted]). Accord Joslyn, supra at 351-352, quoting Zayre Corp. v. Attorney Gen., 372 Mass. 423, 433 (1977) (principle of judicial restraint includes recognition of inability and undesirability of judiciary substituting its notions of correct policy for that of popularly elected Legislature); Keene, 406 Mass. at 305 ("The

sole issue is whether the statute falls within the legislative power to enact, not whether it comports with a court's idea of wise or efficient legislation").

Although the six-year time limit "is in some manner arbitrary," it is the Legislature's task to draw the line, not ours (citation omitted). Joslyn, 445 Mass. at 351. See Rudenauer, 445 Mass. at 359 (court will not undo Legislature's "studied determination"). Our obligation is to adhere to the terms of the statute "and not, upon imaginary equitable considerations, to escape from the positive declarations of the text" (citation omitted). Joslyn, supra at 352. If doing so results in any "inconveniences or hardships," then it is for the Legislature, not for the court, to resolve[10] (citation omitted). Id.

Conclusion. We answer the certified question as follows: Section 2B completely eliminates all tort claims arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property after the established time period has run, even if the cause of action arises from a disease with an extended latency period and

---

[10] The plaintiffs point out that a number of other State Legislatures have effectively exempted asbestos-related illnesses from their respective statutes of repose concerning improvements to real property. We encourage our Legislature to consider doing the same should it determine that such an exception is consonant with the Commonwealth's public policy.

even if a defendant had knowing control of the instrumentality of injury at the time of exposure.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the District of Massachusetts, as the answer to the question certified, and will also transmit a copy to each party.