SUPREME JUDICIAL COURT 
 
 A.D. vs. K.S. (and a consolidated case[1])

 
 Docket:
 SJC-13665
 
 
 Dates:
 January 8, 2025 - April 24, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Repose, Statute of. Probate Court, Paternity proceeding, General equity power. Paternity. Parentage
 
 

             Complaints filed in the Middlesex Division of the Probate and Family Court Department on April 6 and June 6, 2022.
            After consolidation, the case was heard by Thomas J. Barbar, J.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            David E. Cherny (Thomas D. Ritter also present) for K.S.
            Pamela J. Schaefer (Elizabeth C. Chernus also present) for A.D.
            The following submitted briefs for amici curiae:
            Andrea Joy Campbell, Attorney General, & Helle Sachse, Assistant Attorney General, for the Attorney General.
            Patience Crozier for GLBTQ Legal Advocates & Defenders.
            Christina Paradiso, Laura W. Gal, & Jamie Sabino for Community Legal Aid & others.
            WENDLANDT, J.  Pursuant to G. L. c. 209C, § 2, the paternity of a nonmarital child can be acknowledged voluntarily by signing a form.  The signatory and the birth parent, who also must sign the form, have sixty days to reconsider the acknowledgment; that deadline is extendable to one year from the date of signature but only in cases of fraud, duress, or mistake of fact.  G. L. c. 209C, § 11 (a) (statute of repose).  Once these periods have run, however, the signatory is the legal father of the child with all the attendant rights and responsibilities of a parent.  See id.  The statute of repose evinces the Legislature's judgment that, as a matter of public policy, the best interests of a nonmarital child, just like those of a marital child, are served by a final determination as to who her parents are.  The finality of such determinations has fundamental consequences for, among other things, the child's emotional and financial security.
            This case presents the question whether, once the statute of repose has run, a Probate and Family Court judge has the equitable authority to override the legislatively specified timelines for finality of a parentage determination and to declare that the legal father of a child is a different person -?- one whom genetic testing shows is the child's biological father -- where the biological father has no other ties to the child.  We conclude that the judge has no such authority in such circumstances.[2]
            1.  Background and procedural posture.[3]  On May 30, 2017, the child was born.  Her parents were not married.  Although her mother, A.D. (mother), had had sexual relations with multiple men around the time of conception, she believed and informed Q.T. (father) that he was the child's father.  The father provided financial and other support to the mother throughout the pregnancy, and on June 1, 2017, two days after the child's birth, he signed a voluntary acknowledgement of parentage (VAP).[4]  The father's name was listed as the child's father on her birth certificate, and the child was given the father's surname.
            On June 27, 2017, the mother filed a complaint (first complaint) in the Probate and Family Court to establish a visitation schedule for the father.  However, it soon became evident to the parents that the child did not share the father's physical characteristics.  The parents decided to take a deoxyribonucleic acid (DNA) test (2017 DNA test), and on July 6, 2017, thirty-five days after the father signed the VAP, the test confirmed that the father was not the child's genetic father.  Thereafter, the first complaint was dismissed without prejudice when neither parent appeared at a September 2017 hearing.  The father ceased all further efforts to maintain either a financial or emotional relationship with the child.[5]
            Three years later, on September 21, 2020, the mother filed a complaint (second complaint) against the father, hoping to obtain a court-ordered DNA test to confirm the results of the 2017 DNA test.  The second complaint was dismissed without prejudice.  The docket notation provided:  "Dad is on the Birth Cert[ificate]."
            The mother also commenced efforts to identify the child's genetic father.  DNA tests eventually excluded the mother's other sexual partners during the relevant time frame of conception, save one.  On that basis, the mother believed that a man she identified as "Kevin" might be the child's genetic father.  The mother's efforts to locate Kevin initially failed.  
            In December 2020, the mother turned to a DNA testing platform, which identified a strong genetic link between the child and K.S. (biological father).[6]  Believing K.S. to be the man she had known as Kevin, the mother attempted to contact him.  He did not respond and deleted his profile on the testing platform.
            Meanwhile, on January 5, 2021, the Department of Revenue (DOR) brought a complaint (third complaint) for child support on the mother's behalf against the father.  The mother did not appear at the first hearing, however, and the action was dismissed for lack of prosecution.
            Instead of seeking support from the father or cooperating with DOR's efforts to do so, the mother, armed with the new information concerning the child's DNA test, filed a complaint (fourth complaint) to establish the biological father as the child's legal father.  The fourth complaint was filed on February 16, 2021, almost four years after the father signed the VAP.  The biological father moved to dismiss, arguing that the VAP signed by the father was conclusive and could no longer be contested because the sixty-day deadline under the statute of repose had lapsed.  The fourth complaint was dismissed without prejudice; a Probate and Family Court judge noted that the complaint "was inappropriately permitted in light of" the fact that "the child's birth certificate states [that her] father's name is [Q.T.]"
            On November 1, 2021, more than four years after the father signed the VAP, the mother filed a complaint (fifth complaint) to establish paternity, again against the father and again requesting genetic marker testing (GMT) to exclude the father as the child's genetic parent.  A different Probate and Family Court judge (second judge) ordered the GMT; the results confirmed that the father was not the child's genetic father.  The second judge dismissed the fifth complaint with prejudice on the ground that "[g]enetic marker testing indicates defendant is not the father."
            On April 6, 2022, the mother filed another complaint (sixth complaint) to establish paternity.  This complaint, filed almost five years after the VAP was executed, was her second complaint against the biological father.  The mother sought an order for GMT of the biological father.  In addition, on June 6, 2022, five years and five days after the father signed the VAP, the mother filed a complaint (seventh complaint), against the father, seeking to rescind the VAP.
            The biological father moved to dismiss the sixth complaint to establish paternity and opposed GMT, each on the basis that, because the time to rescind the VAP under the statute of repose had run, the VAP "legally and irreversibly identified" the father as the child's father.  After consolidating the sixth and seventh cases, which had overlapping legal issues and implications, the second judge denied the biological father's motion to dismiss and ordered the requested GMT.[7]  The GMT results confirmed that the biological father was the child's genetic parent.
            The second judge rescinded the VAP, adjudicated the biological father to be the child's legal father, ordered that the father's name be removed from the child's birth certificate, and ordered that the biological father's name be added to the birth certificate.  The judge found that "keep[ing] a parentage determination in place that has conclusively been disproved by GMT" did not further the purpose of G. L. c. 209C, "especially . . . where, as here, the party seeking to rescind the [VAP] is [the child's] mother and there is no pre-existing personal or financial relationship between the second parent named on the birth certificate [(i.e., the father)] and [the child]."  The biological father timely appealed,[8] and we transferred the case from the Appeals Court on our own motion.
            2.  Discussion.[9],[10]  a.  Equitable authority to override statute of repose.  As relevant here, G. L. c. 209C provides a voluntary mechanism for establishing the parentage of nonmarital children by a VAP signed by the birth parent and a putative parent, notarized, and filed with the registrar of vital records and statistics.  See G. L. c. 209C, § 2.[11]  A VAP has important legal consequences for the parents and the subject child.  Once final, for example, a VAP provides a basis for an order of child support.  A VAP also may provide grounds for visitation or custody.  In either case, no further order of a court to establish paternity is required.  See G. L. c. 209C, § 11 (a).[12]  In short, a VAP is critical to providing important protections for a child and to establishing the parental rights and obligations of the signatories vis-à-vis the child.[13]
            Given the consequences of a VAP for a child and her parents, the statute of repose establishes strict time frames for rescinding or challenging a VAP.  See G. L. c. 209C, § 11 (a).  Either signatory may rescind his or her acknowledgment, for any or no reason, by filing -- with notice to the other parent -- a petition to rescind in the Probate and Family Court within sixty days of signing.[14]  Id.  Thereafter, a VAP may be challenged "only on the basis of fraud, duress or material mistake of fact," and even when such grounds exist, the challenge must be brought within one year.[15]  Id.  The deadlines set forth in § 11 (a), like those set forth in other statutes of repose, "place an absolute time limit" on efforts to rescind or challenge a VAP.[16]  See Joslyn v. Chang, 445 Mass. 344, 347 (2005), quoting McGuinness v. Cotter, 412 Mass. 617, 622 (1992).  Once these deadlines have passed, a VAP "shall establish paternity as of the date it has been signed" and "no judicial proceeding shall be required or permitted to ratify" a VAP that has not been challenged timely.[17]  G. L. c. 209C, § 11 (a).[18]
            The statute of repose evinces the legislative judgment that "the finality of paternity judgments" is critical for the well-being of nonmarital children.  Paternity of Cheryl, 434 Mass. 23, 30 (2001), citing G. L. c. 209C, § 11.  Cf. Anderson v. Anderson, 407 Mass. 251, 257-258 & n.6 (1990) (precluding father's challenge to paternity judgment and collecting cases).  The finality of a VAP furthers the Legislature's purpose in enacting G. L. c. 209C:  "to ensure that nonmartial children receive the same rights and protections as those born to parents married to one another."  J.M. v. C.G., 492 Mass. 459, 463 (2023).  See G. L. c. 209C, § 1 ("Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children").  The deadlines set forth in § 11 (a) provide nonmarital children stable and permanent parentage like that generally enjoyed by marital children.  J.M., supra.  Whatever the personal relationship between a child and her father, the statute of repose serves to at least "protect her financial security and other legal rights."  Paternity of Cheryl, supra at 36.  Thus, when the time to challenge a VAP has run, the Legislature has determined, biology must yield to finality.  See J.M., supra at 464, quoting Adoption of a Minor, 471 Mass. 373, 378 n.8 (2015) ("we long have recognized that 'families take many different forms' and that thus 'a genetic connection between parent and child can no longer be the exclusive basis for imposing the rights or duties of parenthood'").
            We acknowledge that "[i]dentification of any specific, ascertainable endpoint is 'in some manner arbitrary[,] but the drawing of the line . . . is a task to be exercised at the discretion of the appropriate branch of government,' the Legislature."  Joslyn, 445 Mass. at 351, quoting Zayre Corp. v. Attorney Gen., 372 Mass. 423, 433–434 (1977).  "[S]tatutes of repose 'may impose great hardship,'" and we appreciate the desire to alter the deadlines set by the Legislature in a situation where it may appear to a jurist that equity requires a different result.  Joslyn, supra.  But in the absence of a substantial relationship between a genetic father and a child, see note 17, supra, principles of judicial restraint foreclose a judge from substituting his "notions of correct policy for that of a popularly elected Legislature."  Joslyn, supra at 352, quoting Zayre Corp., supra at 433.
            b.  Legal father.  The biological father maintains that because the statute of repose had run and the VAP established the father as the legal father, the judge had no authority to rescind the VAP, adjudicate that the biological father was the child's legal father, or order that the father's name be removed from and replaced with the biological father's name on the child's birth certificate.  Because there is no substantial relationship between the child and the biological father, we agree.
            The VAP was executed on June 1, 2017.  For years, however, neither the mother nor the father sought to rescind the VAP as required by the statute of repose.[19]
            The complaint to establish paternity against the biological father was filed on April 6, 2022, far outside both the sixty-day and one-year challenge periods under G. L. c. 209C, § 11 (a).  For the reasons discussed supra, the judge lacked authority to redetermine the child's parentage.  See J.M., 492 Mass. at 464.
            Accordingly, we vacate the judgments and remand these matters to the Probate and Family Court for proceedings consistent with this opinion.
So ordered.
footnotes

 
            [1] A.D. vs. Q.T.
            [2] We acknowledge the amicus brief submitted by GLBTQ Legal Advocates & Defenders and the amicus letters submitted by the Attorney General and Community Legal Aid, Greater Boston Legal Services, and Massachusetts Law Reform Institute.
            [3] We set forth material facts drawn from the Probate and Family Court judge's findings, which were supported by affidavits, exhibits, and testimony submitted at a hearing before the judge.  
            [4] The VAP bearing the father's signature is not in the appellate record; however, the standard form at the relevant time provided the following disclosures to the signatories:
"DO NOT SIGN THIS FORM IF EITHER OF YOU IS NOT SURE, OR HAS ANY DOUBT WHO THE FATHER IS.  If either of you is not sure who the father is, have paternity testing and get the results before signing the acknowledgment. . . .
"Paternity is established as of the date both parents have signed the acknowledgment, if it is properly completed and filed.  Sixty (60) days or less after both parents sign the form, it is as binding as a court judgment of paternity.  The acknowledgment may be the basis for court orders of child support, custody or visitation.
"If, after signing, either of you believes that the man named on this form is not the father, one of you must file a case in Probate and Family Court within 60 days of the signing, requesting the court to rescind (cancel) the acknowledgment.
"If you are a party to a court hearing about the child, such as a custody or child support hearing, during the 60 day period after signing, and you want to rescind (cancel) the acknowledgment, you must say so in the hearing and file a case in Probate and Family Court asking to rescind before the end of the 60 day period.  Otherwise, your rights to rescind the acknowledgment will expire (run out) at the time of the hearing.
"After the acknowledgment form becomes like a court judgment of paternity, you can challenge it in court within one year only on limited grounds of fraud, duress or material mistake of fact. . . .
"Both parents must support their child from birth.  If your child does not live with you, a court may order you to pay child support. . . .
"If You Sign This Form . . . [i]t is easier to get a child support order should the need arise."
Voluntary Acknowledgement of Parentage (2011), https://www.mass
.gov/doc/voluntary-acknowledgment-of-parentage/download [https://perma.cc/8XMP-T6ET].
            [5] The father cooperated with the mother's efforts to change the child's surname to that of the mother.
            [6] Specifically, the testing platform reported that the child shared 49.5 percent of her DNA with K.S. and labeled K.S. her "father."
            [7] The biological father petitioned a single justice of the Appeals Court to permit him to file an interlocutory appeal of the GMT order, but the single justice denied the petition.
            [8] The father did not appeal and did not participate in this appeal.
            [9] General Laws c. 209C was recently amended to, among other things, make its provisions gender neutral.  See St. 2024, c. 166 (effective Jan. 1, 2025).  The changes do not affect our conclusion, and unless otherwise noted, we refer to the preamendment version.
            [10] We note that, although he is not a party to the VAP, the biological father has a cognizable interest sufficient to confer standing to challenge its rescission, an essential predicate to the determination that the biological father was the child's legal father with attendant legal and pecuniary consequences.  See G. L. c. 209C, § 1 ("Every person is responsible for the support of his child born out of wedlock from its birth up to the age of eighteen . . ."); G. L. c. 215, § 9 (only "[a] person aggrieved" may appeal from Probate and Family Court order, judgment, or decree).  But see G. L. c. 209C, § 26 (c), inserted by St. 2024, c. 166, § 65 (effective Jan. 1, 2025) (authorizing, in certain circumstances, court to "adjudicate a child to have more than [two] parents if the court finds that it is in the best interest of the child").
            [11] General laws c. 209C, § 2, provides that paternity of nonmarital children is established "by filing with the court, the clerk of the city or town where the child was born or the registrar of vital records and statistics an acknowledgment of parentage executed by both parents pursuant to [§] 11 or pursuant to an action" in court.
            [12] General laws c. 209C, § 11 (a), provides:
"A written voluntary acknowledgment of parentage executed jointly by the putative father . . . and the mother of the child . . . shall be recognized as a sufficient basis for seeking an order of support, visitation or custody with respect to the child without further proceedings to establish paternity, and no judicial proceeding shall be required or permitted to ratify an acknowledgment that has not been challenged pursuant to this section. . . .  Unless either signatory rescinds the acknowledgment within [sixty] days of the date of signing as provided in this section, the acknowledgment shall establish paternity as of the date it has been signed . . . and shall have the same force and effect as a judgment of paternity, subject to challenge within one year only on the basis of fraud, duress or material mistake of fact."
            [13] In view of these significant consequences for both the child and the parents, the standard form expressly sets forth the specific consequences of signing a VAP, as well as the time frames for rescinding it, as provided in the statute of repose.  See note 4, supra.
            [14] This sixty-day period during which rescission for any or no reason is permitted may be shortened if, prior to its expiration, "the signatory is a party to an administrative or judicial proceeding related to the child, including a proceeding to establish child support, visitation or custody, and fails to rescind the acknowledgment at the time of such proceeding."  G. L. c. 209C, § 11 (a).
            [15] That the Legislature expressly codified this one-year exception to the sixty-day deadline bolsters our conclusion infra that the judge here had no equitable authority to extend the statute of repose based on the circumstances of the present matter.  See Joslyn v. Chang, 445 Mass. 344, 350 (2005), quoting LaBranche v. A.J. Lane & Co., 404 Mass. 725, 729 (1989) ("The fact that the Legislature specified one exception . . . strengthens the inference that no other exception was intended").
            [16] Our previous decisions are clear that "statutes of repose may not be 'tolled' for any reason," not even based on "compelling equitable considerations."  Nett v. Bellucci, 437 Mass. 630, 635, 646 (2002).  But see note 15, supra.
            [17] Notably, we are not concerned in this case with a challenge to the child's parentage determination based on a substantial relationship between a biological father and a child.  See J.M. v. C.G., 492 Mass. 459, 465-468 (2023), citing C.C. v. A.B., 406 Mass. 679, 685-686, 689-691 (1990) (putative parent who "demonstrate[s] a substantial parent-child relationship by clear and convincing evidence" may proceed with action to establish parentage after time limits set forth in statute of repose).
            [18] The standard form provides written notice of the deadlines provided by the statute of repose.  See note 4, supra.
            [19] As noted supra, the mother brought a first complaint to establish a visitation schedule for the father in June 2017, within the G. L. c. 209C, § 11 (a), sixty-day period.  During the pendency of that action, and still within the period for rescission set forth in § 11 (a), the parents determined that the father was not the child's genetic father.  Neither parent took any action to challenge the father's legal paternity until the mother filed the second complaint three years later, however.  And neither parent specifically sought to rescind the VAP until the mother filed the seventh complaint, more than five years after executing the VAP.